Robert P. O'Connor et al., Appellants, v. Board of Trustees of Firemen's Pension Fund of the City of Chicago et al., Appellees.

### Gen. No. 15,951.

1. Pensions—*who entitled to benefits under Police and Firemen's Relief Fund Act of 1877.* Nothing in the act above as amended in 1879 prevented a fireman or policeman who had been discharged from obtaining a pension under such Act if he had theretofore served ten years.

2. Pensions—*what not default in payment of assessments.* The act of 1879 amending the Police and Firemen's Relief Fund Act of

1877 providing for the payment of assessments by policemen and firemen after retirement provided that such assessments should be fixed and notice thereof given and until such assessments had been so fixed and such notice given there could be no default with respect to the payment of assessments.

3. PENSIONS—*when right not barred by limitation or laches.* None of the laws respecting pensions for retired policemen and firemen fix a time within which applications for pensions must be made and even a delay of twenty years does not bar the right nor does the doctrine of laches apply against the right, as any who may have failed to make application have themselves been the largest sufferers.

4. PENSIONS—*section 9 of act of 1887 construed.* The words "now entitled" in the saving paragraph of the act of 1887 known as section 9, include not only those who were at such time actually in receipt of pensions but those who were entitled upon application to obtain them.

5. PENSIONS—*act of 1907 construed.* The act of 1907 did not repeal or in any way affect section 9 of the act of 1887.

6. PENSIONS—*appropriate remedy to prevent dissipation of funds.* Where the controversy does not arise directly with those in control of the funds but is between future beneficiaries thereof and those claiming the right of participation therein, an injunction may be granted to prevent the payment of pension funds to such claimants if they are not legally entitled thereto.

7. PENSIONS—*powers of trustees of funds.* When acting within the power and authority conferred upon it by the statute the board of trustees has full discretion and its acts are final and binding. But it is not vested with unlimited power and discretion in deciding who is entitled to a pension for the reason that the qualifications therefor are fixed by the statute itself. The power of the board must be exercised within the authority conferred by the statute and in accordance with its provisions.

8. PLEADING—*when bill not multifarious.* A bill to restrain unlawful participation in a pension fund is not multifarious in joining as co-defendants all parties who are attempting to obtain possession of any part of the trust fund through the illegal action of the trustees of the fund. The fact that the defendants to the bill claim under distinct titles does not alter the situation.

Bill in chancery. Error to the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Affirmed in part, reversed in part with directions. Opinion filed April 8, 1910.

HAYES MCKINNEY, for appellants; S. P. SHOPE and JOHN R. COCHRAN, of counsel.

EDWARD J. BRUNDAGE and CLYDE L. DAY, WILLIAM A. DOYLE (JOSEPH J. THOMPSON, of counsel) and THOMAS F. DOW, for appellees.

MR. JUSTICE SMITH delivered the opinion of the court.

The complainants in this case filed an original bill and subsequently an amended and supplemental bill. To the amended and supplemental bill the defendants filed demurrers and the Circuit Court entered a decree sustaining the demurrers and on motion of the defendants dismissing the complainants' bill. From that decree this appeal is prosecuted.

Inasmuch as the amended and supplemental bill states all that the original bill stated, with additional facts, the following statement of the allegations of the amended and supplemental bill is deemed sufficient for the purposes of this opinion.

The bill was filed by O'Connor, Evans and Wolf, who are veteran captains in the Chicago Fire Department, each being now entitled to retire on half pay under the statute, against the Board of Trustees of the Firemen's Pension Fund of the City of Chicago and against six pensioners of that fund to restrain a spoliation of the Firemen's Pension Fund and to prevent a diversion of it from the purposes for which it was created by the statute. The complainants base their rights to file the bill, which is filed both on behalf of themselves and on behalf of all other members of the fire department who are contributors to, and future beneficiaries of, the Firemen's Pension Fund, upon the facts that they are now and for more than twenty years have been contributors to the Firemen's Pension Fund and that the members of the fire department have contributed to this fund since its organization in 1887 more than the sum of $207,934.33; and also upon the ground that the statutes of the State of Illinois set apart this Firemen's Pension Fund solely for the benefit of the

members of the fire department, and not for the benefit of ex-members.

The six pensioners made defendants in the bill are Mathias Benner, Arthur J. Calder, Daniel H. Flynn, John D. Cavanaugh, John C. Schmidt and Adolph Wilke.

Mathias Benner was in the fire department, it is averred, from April 5, 1859, to July 16, 1879, when he was discharged. He had been out of the service about twenty-eight years when he applied for a pension. He had been out of the service for nearly eight years when the act of 1887 created the Firemen's Pension Fund, and he was in the department only two years of the time during which the Police and Firemen's Relief Fund was in force. Benner had never paid anything into the Firemen's Pension Fund and did not pay anything into the Police and Firemen's Relief Fund after leaving the service on July 16, 1879.

It is averred that Benner, in 1907, applied to the Board of Trustees of the Firemen's Pension Fund of the City of Chicago for a pension of $1,800, being one-half of the salary of $3,600 which he was receiving when he was discharged, he being then. Chief of the Department. The Board of Trustees of the Firemen's Pension Fund on December 21, 1907, by formal resolution denied him a pension, basing their act upon the adverse opinion of the Corporation Counsel of the city of Chicago, who was ex-officio a member of the Board of Trustees of the Firemen's Pension Fund. On May 25, 1908, Benner instituted a *mandamus* proceeding in the Circuit Court of Cook county to compel the Board of Trustees to pay him a pension of $1,800 per year. The defendants filed a general demurrer to this petition, and on September 24, 1908, an order or judgment was entered in the Circuit Court in favor of Benner. The Board of Trustees elected to stand by their demurrer and prayed an appeal to the Appellate Court. These were all of the proceedings in the case, and the

appeal was never perfected. The bill then charges that the Board of Trustees of the Firemen's Pension Fund made no adequate or sufficient defense to this Benner suit, and the order or judgment entered therein was by the consent and acquiescence of the Board of Trustees, and that no effort whatever had been made by the board to reverse that order or judgment, either by appeal, writ of error or otherwise; that the complainants' rights were not properly safeguarded and protected and that the Circuit Court's order or judgment was null and void and that the court was without jurisdiction to enter it; that the Board of Trustees nevertheless proceeded to put Benner's name on the Firemen's Pension Fund pay roll and have been paying him $150 per month, the aggregate amount paid him up to the date of the filing of the original bill being more than a thousand dollars. Benner was not a member of the fire department, it is averred, subsequent to July 16, 1879, and had not served for twenty-two years, had never been a beneficiary of the Police and Firemen's Relief Fund or of the Firemen's Pension Fund, and had not been retired from the fire department for disability, as provided by the statute.

The second defendant is Arthur J. Calder who, it is averred, entered the fire department May 9, 1868, and resigned July 5, 1884, his resignation being given to avoid meeting charges which were then pending against him, that he had absented himself from duty without the leave of his superior officer. He had been out of the service for about twenty-three years when he applied for a pension. He had been out of the service for about three years when the act of 1887 created the Firemen's Pension Fund, and his service in the department during the time the Police and Firemen's Relief Fund Act of 1887 was about seven years. Calder had never paid anything into the Firemen's Pension Fund, and did not pay anything into the Police and Firemen's Relief Fund after leaving the service July 5, 1884.

In 1907 Calder applied to the Board of Trustees of the Firemen's Pension Fund of the City of Chicago for a pension of $600, it being one-half of the salary of $1,200 which he was receiving when he resigned. The Board of Trustees of the Firemen's Pension Fund on December 21, 1907, on the same day that similar action was taken in the Benner case, by formal resolution denied him a pension, basing their act, as in the Benner case, upon the adverse opinion of the Corporation Counsel of the City of Chicago. On May 25, 1908, Calder commenced a *mandamus* proceeding in the Circuit Court of Cook county to compel the Board of Trustees to pay him a pension of $600 per year. He averred in his petition that he was suffering from physical disability. His averment in the petition that he was suffering from physical disability was fraudulent and untrue, it is charged, for, as a matter of fact, he was then a bailiff in the Circuit Court of Cook county, and had for a long time been performing his duties in that position and receiving the compensation therefor amounting to more than $1,200 per year. The defendants also filed a general demurrer to the Calder petition and on September 24, 1908, a judgment was entered in the Circuit Court in favor of Calder. The Board of Trustees elected to stand by their demurrer and prayed an appeal to the Appellate Court. These were all of the proceedings in the case, and the appeal was never perfected. The bill makes the same charges with reference to the Calder suit that was made in the Benner case and avers that nevertheless the Board of Trustees put Calder on the Firemen's Pension Fund pay-roll and had been paying him $50 per month from the date of the judgment, the aggregate amount paid him before filing of the bill being over $350. The bill also avers that Calder was not a member of the fire department subsequent to July 5, 1884; that he had not served for twenty-two years and never had been a beneficiary of the Police and Firemen's Relief Fund, or of the Firemen's Pension Fund, and had not been

retired from the fire department for disability as provided by the statute.

It is averred that the defendant Daniel H. Flynn entered the fire department February 1, 1889, and resigned September 16, 1903, his resignation being given to avoid meeting charges of misconduct then pending against him, namely, that he had absented himself from duty without the permission of his superior officer. He had been out of the service for nearly five years when he applied for a pension. He had never been in the service during the time that the Police and Firemen's Relief Fund Act of 1877 was in effect, and entered the department about two years after the Firemen's Pension Fund Act of 1887 was enacted. On July 14, 1908, Flynn applied to the Board of Trustees of the Firemen's Pension Fund of the City of Chicago for a pension and on October 13, 1908, the Board of Trustees voted him back payment of pension from the date of his application to the date of the action of the Board, amounting to $124.98, and also that he be paid in future a pension of $47.25 per month. Up to the filing of the original bill he had received out of the Firemen's Pension Fund through such payments the sum of $450. Flynn was not a member of the fire department subsequent to September 16, 1903, had not served for twenty-two years, had never been a beneficiary of the Police and Firemen's Relief Fund or of the Firemen's Pension Fund, and had not been retired from the fire department for disability as provided by the statute.

The bill avers that the defendant John D. Cavanaugh entered the fire department October 12, 1891, and was discharged on January 28, 1892, upon charges that he had been absent from quarters without leave, to which charges he pleaded guilty; that he again became a member of the fire department on May 20, 1896, and served until May 4, 1906, when he was discharged for neglect of duty, intoxication and disorderly conduct. He had been out of the service about two years when

he applied for a pension. He had not been in the service at all during the time the Police and Firemen's Relief Fund Act of 1877 was in effect, and did not enter the service for the first time until four years after the enactment of the Firemen's Pension Fund Act of 1887.

On July 9, 1907, Cavanaugh applied to the Board of Trustees of the Firemen's Pension Fund of the City of Chicago for a pension, and on April 21, 1908, the Board voted to grant him back payment of pension from the date of his discharge up to the date of the action of the Board, amounting to $1,382.53, and also that he be paid in the future a pension of $57.91 per month. Up to the time of the filing of the original bill in this case he had been paid out of the Firemen's Pension Fund, through such payments, the sum of at least $2,000. Cavanaugh was not a member of the fire department subsequent to May 4, 1906, and had not served for twenty-two years, had never been a beneficiary of the Police and Firemen's Relief Fund or of the Firemen's Pension Fund and had not been retired from the fire department for disability as provided by the statute.

The bill avers that the defendant John C. Schmidt entered the fire department in the month of April, 1860, and was discharged August 1, 1882, because of his refusal to pay his just debts incurred while in the service. He had been out of the service over twenty-six years when he applied for a pension, and had been out of the service about five years when the Act of 1887 created the Firemen's Pension Fund, and his service in the department during the time the Police and Firemen's Relief Fund Act of 1877 was in effect was about five years. Schmidt had never paid anything into the Firemen's Pension Fund, and did not pay anything into the Police and Firemen's Relief Fund after leaving the service on August 1, 1882.

January 12, 1908, Schmidt applied to the Board of Trustees of the Firemen's Pension Fund for a pension. The Board of Trustees on January 26, 1909, denied him a pension, basing their act, as in the Benner and Calder

cases, upon the adverse opinion of the Corporation
Counsel of the City of Chicago, an ex-officio member
of the Board of Trustees. Schmidt commenced a
*mandamus* proceeding in the Circuit Court of Cook
county April 21, 1909, to compel the Board of Trustees
to pay him a pension of $41.67 per month for the rest
of his life, being one-half of the salary he was receiv-
ing when he was discharged. The defendants filed a
general demurrer to the Schmidt petition. On June 3,
1909, a judgment was entered in the Circuit Court in
favor of Schmidt. The Board of Trustees elected to
stand by their demurrer and prayed an appeal to the
Appellate Court. The appeal was never perfected.
The bill then makes the same charges with reference
to the inadequate and insufficient defense to this suit
that were made with reference to the Benner and
Calder suits. The bill then avers that the Board of
Trustees nevertheless proceeded to put Schmidt's name
on the Firemen's Pension Fund pay roll and intended
to pay him $41.67 per month. Schmidt was not a mem-
ber of the fire department subsequent to August 1,
1882, had never been a beneficiary of the Police and
Firemen's Relief Fund, or of the Firemen's Pension
Fund, and had not been retired from the fire depart-
ment for disability as provided by the statute.

The bill avers that the defendant Adolph Wilke en-
tered the fire department January 5, 1859, and resigned
in January, 1868. He again re-entered the service De-
cember 12, 1877, and continued therein until September
1, 1881, when he again resigned. He had been out of
the service over twenty-seven years when he applied
for a pension, and about seven years when the Act of
1887 created the Firemen's Pension Fund, and his
service in the department during the time the Police
and Firemen's Relief Act of 1877 was in effect was
about seven years. Wilke had never paid anything
into the Firemen's Pension Fund, and did not pay any-
thing into the Police and Firemen's Relief Fund after
leaving the service on September 1, 1881.

Wilke applied, January 12, 1909, to the Board of Trustees of the Firemen's Pension Fund for a pension. On January 26, 1909, the Board of Trustees, by resolution, denied him a pension, basing their act, as in the Benner, Calder and Schmidt cases, upon the adverse opinion of the Corporation Counsel of the City of Chicago.  On April 21, 1909, Wilke started a *mandamus* proceeding in the Circuit Court of Cook county to compel the Board of Trustees to pay him a pension of $37.50 per month, for one-half of his salary when he resigned, for the remainder of his life.  A general demurrer was filed by the defendants, the Board of Trustees, and on June 3, 1909, judgment was entered in the Circuit Court in favor of Wilke, and the same proceedings are set up and the same charges were made with reference to this suit that are made in the bill in regard to the Benner suit.  The bill then sets up that the Board of Trustees put Wilke's name on the Firemen's Pension Fund pay roll, and that it is the purpose and intention of the trustees to pay him the pension of $37.50 per month.  Wilke was not a member of the fire department subsequent to August 1, 1881, had not served for twenty-two years, had never been a beneficiary of the Police and Firemen's Relief Fund or of the Firemen's Pension Fund and had not been retired from the fire department for disability as provided by the statute.

The bill then avers that the Board of Trustees of the pension fund had been guilty of dereliction of duty and had not protected the trust which the statute gave them, setting up specific facts which it is claimed show that the Board of Trustees had deliberately acted in such a way as to aid the claimants of illegal pensions and to hinder those who sought to prevent a spoliation of the funds.  Among such facts it is averred that on July 3, 1909, after the filing of the original bill, the complainants addressed a written communication to the Board of Trustees, requesting the Board to take steps to procure a reversal of the orders of judgment

in the Benner and Calder cases. At that time the complainants had no knowledge of the action taken in the Schmidt and Wilke *mandamus* cases, or that such cases existed. In the communication the complainants offered at their own expense and costs, through counsel employed therefor by the complainants, to take all the necessary and proper steps in endeavoring to procure a reversal of the Benner and Calder *mandamus* judgments, using the name of the Board of Trustees for the purpose, and offering to furnish reasonable and satisfactory indemnity against any loss or expense to be suffered by the Board of Trustees; that the Board made no reply to this communication; that the Board of Trustees, although not replying to the complainant's communication, nevertheless through their authorized legal representatives informed the complainants that they would not permit the complainants to interfere or participate by their counsel or legal adviser, or in any other way, in any such proceedings brought by the Board of Trustees to reverse such *mandamus* judgments.

The bill alleges that no efforts have been made up to the time of the filing of the amended and supplemental bill, to get these cases into the Appellate Court for the October Term 1909, and that the failure of the Board of Trustees to take any action to get those cases into the Appellate Court has the effect of extending the time of reasonable expectation for a hearing in that court indefinitely into the future.

The bill avers that the complainants were not aware of the Benner and Calder *mandamus* suits until the month of April, 1909, which was long after the judgments were entered, and had no knowledge of the Schmidt and Wilke cases, until July 15, 1909, and after the Board of Trustees on that date had voted to place Schmidt and Wilke on the pay roll; that by the terms of the petitions in the Benner and Calder *mandamus* cases it was prayed that their pensions be paid out of the "Police Pension Fund," instead of the "Firemen's

Pension Fund;'' and in those two cases the orders of the Circuit Court, as entered, were that the writs issue as prayed for in the respective petitions; that complainants' counsel called this condition of the record to the attention of the legal adviser and representative of the Board of Trustees, and on June 16, 1909, at the May 1909 term of the Circuit Court, without notice to the complainants or their counsel, and after the original bill in this case had been filed, and after notice had been served on all of the defendants that a temporary injunction would be asked on June 17, 1909, the Board of Trustees of the Firemen's Pension Fund appeared before Judge Gibbons, in the Circuit Court, by its counsel and legal adviser, and agreed and consented to the entry of orders purporting to amend the records in the cases by striking out the word ''Police'' and inserting the word ''Firemen's;'' and also by inserting the word ''Firemen's'' in numerous places in the respective petitions where the fund was referred to as the ''Pension Fund'' without designating either the Police Pension Fund or the Firemen's Pension Fund; that these amendments were not based upon any memorial paper or other sufficient writing or memoranda as required by law; that the complainants first learned of the amendments on June 17, 1909, and immediately on that day addressed a written communication to the Board of Trustees of the Firemen's Pension Fund, which was received by that Board on the morning of June 18, 1909, objecting to the amendments being consented to by the Board and notifying the Board that such amendments were without basis or legal foundation and requesting that the Board of Trustees file bills of exceptions in each of these cases which should show upon what basis or memoranda or writing the amendments were made. This notice further advised the Board of Trustees that Saturday, June 19, 1909, was the last day of the May 1909 term of the Circuit Court, and therefore would be the last day upon which to obtain leave to file such bill of exceptions. To this the Board

472 APPELLATE COURTS OF ILLINOIS.

O'Connor v. Trustees Firemen's Pension Fund, 155 Ill. App. 460.

of Trustees made no answer and paid no attention, and did not at any time file such bill of exceptions or obtain leave to do so.

The bill alleges that it was the purpose and intention of the Board of Trustees of the Firemen's Pension Fund, by consenting to those amendments, to aid and assist Benner and Calder and to hinder and interfere with and make more difficult the efforts of the complainants to oust Benner and Calder from the pay roll of the Firemen's Pension Fund. A large number of other former members of the fire department, some of whom left the fire department prior to the enactment of the Firemen's Pension Fund Act of 1887, and some of them afterwards, in addition to the defendants named in the bill, have applied for pensions; many others are preparing and planning to do so, encouraged by the successful efforts of the six named pensioners defendant; that defendants Flynn and Cavanaugh have organized an association for the purpose of aiding such former members to obtain pensions and afterwards retain them, and are financially interested in such association; that the questions involved in all of these cases, as well as the cases of the six pensioners specifically named, should be settled in one suit. To bring separate suits to question the rights of all these claimants would require a large number of suits and cause a very great expense, particularly upon the Board of Trustees of the Firemen's Pension Fund.

The bill charges that the Board of Trustees have voted pensions to some of the defendants and refused pensions to others, solely upon grounds of political expediency and without regard to the law or what was right or just, and that the various acts of the Board in connection with these various cases were the result of a corrupt and fraudulent understanding or agreement among the members of the Board to satisfy each other by allowing pensions to the special favorites of the different members.

The bill prays that the Board of Trustees and the

O'Connor v. Trustees Firemen's Pension Fund, 155 Ill. App. 460.

individual members be restrained and enjoined from paying, authorizing, ordering or directing the payment of pensions to the six pensioners named, and that those six defendants be restrained and enjoined from receiving or collecting, or from enforcing or endeavoring to enforce from the Board of Trustees of the Firemen's Pension Fund, or its treasurer, payment of further pensions or annuities; and that the six defendants, pensioners, be each decreed and declared to have no right, title or claim to the pensions or annuities being paid them.    The bill also prays for general relief.

The contentions of complainants are (1) that the Police and Firemen's Relief Fund Act of 1877 was repealed by the Firemen's Pension Fund Act of 1887; (2) that the defendants Benner, Calder, Schmidt and Wilke have no claim under the Act of 1887, except so far as they may take advantage of the saving effect of section 9 of that act, and that a true construction of that section excludes them from the benefits of the saving clause; (3) that defendants Flynn and Cavanaugh do not come under the Act of 1887; (4) that by the Act of 1907, amending the Act of 1887, the legislative intent was to exclude all claims of former members of the fire department such as the defendant pensioners who were not then or thereafter members of the fire department; and (5) that the decisions of the Board of Trustees of the Firemen's Pension Fund upon applications for pensions are "final and conclusive, and not subject to review or reversal except by the board," in all cases where the board has acted within the scope of the authority granted by the statute, and therefore the board's decisions, by formal resolution, that Benner, Calder, Schmidt and Wilke were not entitled to pensions were binding, and the Circuit Court had no power or authority to overrule such decisions in the *mandamus* cases, and on the other hand, the board's decisions in favor of Flynn and Cavanaugh were not binding because they were entirely outside the terms of the Pension Act.

On behalf of the Board of Trustees the contentions are that the bill is a collateral attack upon the judgments in the *mandamus* proceedings in which the court had jurisdiction of the parties and the subject-matter, and that a court of equity will not interfere by injunction to control the action of inferior *quasi*-judicial tribunals, nor review and correct errors in such proceedings, the proper remedy being at law by the writ of *certiorari*.

Counsel for Benner, Calder, Schmidt and Wilke urge that the Act of 1887 preserved their rights acquired under the Act of 1877 as amended, and that the Act of 1907 did not affect the rights of persons entitled to pensions under former acts. Second, as to certain questions within its powers the actions of the Board of Trustees are final and binding but that it has no discretion in deciding who is entitled to a pension, the qualifications being prescribed by the statute itself. Third, that *mandamus* was a proper proceeding to compel the board to comply with the statute. They also insist that the bill is multifarious, and rely upon certain points made by other counsel and stated above.

On behalf of defendants Flynn and Cavanaugh it is insisted that the decision of the Board of Trustees in their cases is final and conclusive, except for fraud or want of power, and not subject to review or attack in the courts.

We shall state our conclusions upon these questions in so far as we deem it necessary as they arise in connection with the discussion of the cases of the several defendants as made by the bill.

From a consideration of the various acts we are of the opinion that if either Benner, Calder, Schmidt or Wilke had applied for a pension immediately after leaving the service they would, under the law of 1877 as amended in 1879, have been entitled to it, there being nothing in the law to prevent one who has been discharged from getting a pension if he had theretofore served ten years.

The provision of the Act of 1879 with reference to paying of assessments after retiring has no application inasmuch as it is not alleged that any assessment was ever fixed or that notice in writing was served on any of the parties requiring them to pay. The fixing of the assessment is essential inasmuch as the law specifies not $5 annually but not more than $5 annually. The notice in writing is specifically required by the Act before there can be a default.

In none of the laws is there any time limitation that prevents application even after twenty odd years.

If these defendants were entitled to apply for pensions immediately after the severance of their connection with the service, the doctrine of laches should not operate against them, because they are the ones who have suffered thereby inasmuch as they might have had their pensions during the entire period. Moreover, the fund has suffered no loss in their failure to pay the $5 a year inasmuch as if this sum had been demanded of them, in accordance with the statute, they undoubtedly would have made their applications for their pensions at a much earlier date.

The main question involved as to these four defendants is the effect of section 9 of the Act of 1887, and specifically, the meaning of the words "now entitled." Complainants urge that by this phrase it was intended to include only those who were either in the actual receipt of pensions at that time, or those to whom such pensions had been voted. The defendants maintain that it includes those who were entitled to apply for pensions at that time, and therefore it includes the four persons in question. The complainants argue in support of their contention that the proviso to this section is that such persons shall no longer receive pensions under the Act of 1877 as amended, that such provision, therefore, necessarily presupposes that they had been receiving pensions under the old act. As against this, however, it may be said, first, that the complainants themselves concede that not only all persons in actual

receipt of pensions under the old Act but also those to whom such pensions had been voted, come within the saving clause. In other words, the word "receive" in the proviso is not to be taken literally, but is to be interpreted as meaning either receive or entitled to receive. If this be so it can just as well be considered that the words "such persons" is to be limited as if it read "such of such persons as are receiving," leaving the main provision broad enough to include not only those actually receiving and those to whom pensions had been voted but who were not yet in the actual receipt of them, but also those who if they had applied would, under the law, have been entitled to have the pensions voted to them. The word "entitled" would not ordinarily mean being in the actual receipt but having a right to receive, and those to whom the pensions had not yet been voted nevertheless clearly had rights to their pensions, though they had not then asserted such rights.

Complainants' contention would involve this situation: that if a man died on June 30, 1887, or became disabled on that day, and his widow did not apply during that day, or he himself did not apply during that day, for a pension, he or she would be forever barred. It cannot be supposed, even if the words "now entitled" were more doubtful in their meaning than we consider them to be, that the legislature contemplated cutting off this class of claimants.

But it is contended that whatever may have been the meaning of section 9 of the Act of 1887, the amendment of section 11 of this Act by the Act of 1907 operated in some manner to fix the class from July 1, 1907, so as to exclude those four defendants. The answer to this is in the first place: Section 9 does not purport to be amended, only section 11. More than this, section 9 is apparently re-enacted. Under these circumstances the language of section 11 would have to be perfectly clear before we could conclude that it was meant in any way to repeal or to affect section 9. Far from being clear

to that effect, in our judgment the meaning of the amendment is plain, and does not in the slightest degree affect section 9. Section 9 has reference only to claimants under the Act of 1877 as amended in 1879. Their rights were saved by the Act of 1887. That saving clause is not in any manner interfered with by the Act of 1907. In the second place, the Act of 1907 materially altered the Act of 1887. If section 11 had been literally re-enacted the benefits of the Act of 1907 would have been confined to those in the service on July 1, 1907, and those who would thereafter enter the service, and it might have been interpreted to cut out those who had become entitled to pensions solely by virtue of the Act of 1887 who were then drawing pensions but who were no longer in the active service on July 1, 1907. To make it perfectly clear that this class should continue to receive the benefits of the Act of 1887 as changed by the Act of 1907 it was necessary to amend section 11 of the Act of 1887 by the addition of the words which were inserted in this amendment. Inasmuch, therefore, as these four defendants, Benner, Calder, Schmidt and Wilke, seem to have a clear right to their pensions, it is unnecessary for us to consider the other objections urged in the bill, especially the effect of the judgments entered in the *mandamus* suits brought by them. The language of the Act of 1887 would seem to give the Board of Trustees powers as to the rights of individuals coming within the classes provided for by the Act, and the power of a court by *mandamus* proceedings to control the discretion of the Board is at least subject to serious doubt, but as all that is asked in this bill is that the Board be enjoined from paying these claimants, and as we have concluded that they come within the class covered by the Act, it follows that the injunction cannot be granted, and it is therefore unnecessary for us further to consider whether the *mandamus* proceedings are absolutely void, or whether the bill contains sufficient charges in relation to those proceedings as would justify a court

478     Appellate Courts of Illinois.

O'Connor v. Trustees Firemen's Pension Fund, 155 Ill. App. 460.

of equity on a collateral attack in setting aside the judgments.

Therefore, as to these four defendants the demurrers were properly sustained.

As to the other two defendants, Flynn and Cavanaugh, they came in under the Act of 1887, and claim only under that Act. They did not serve twenty-two years. They are clearly not within the class of persons contemplated by the Act because they were not retired while in the service by order of the Board of Trustees for disabilities incurred in the service. It is unnecessary, therefore, to determine whether by the amendment of 1907 those who would have been entitled to a pension under the Act of 1887 prior to July 1, 1907, but to whom such pension had not at that time been voted, come within the saving clause of section 11 under the designation therein used of beneficiaries.

It is urged, however, that an injunction is not the proper method of reaching these cases, but that the remedy is by *certiorari*. Ordinarily, where *certiorari* is an adequate remedy an injunction will not lie, but in the present case the controversy is not between these defendants and the Board of Trustees but on the one hand between these complainants, who were not parties to the original proceedings before the Board of Trustees, and on the other hand, the defendants and the Board of Trustees. We do not see how these complainants could bring the question to the attention of a court by *certiorari* proceedings. Moreover, the complainants are future beneficiaries of a trust fund. They charge substantially that their trustees are violating their trust for the benefit of third parties who are wrongfully confederating with the trustees to secure portions of the trust fund to which they are not entitled. A bill by the *cestui que trust* to prevent the payment of the trust funds to such a third party so conniving with the trustees falls within well-recognized principles of equity jurisdiction. It would seem wholly unnecessary to cite authorities in support of this posi-

tion, but inasmuch as it is challenged by the defendants, we cite a few of the numerous authorities: Perry on Trusts, Vol. 2, pages 454 and 455, section 816; Cooper v. McClun, 16 Ill. 435; Sherman v. Leman, 137 id. 94; Waterman v. Alden, 144 id. 90; Dodge v. Woolsey, 18 Howard, (U. S.) 331.

We do not hold that a court of equity has absolute control over all the acts of the board of trustees. When acting within the power and authority conferred upon it by the statute, the board of trustees has full discretion and its acts are final and binding. But it is not vested with unlimited power and discretion in deciding who is entitled to a pension for the reason that the qualifications therefor are fixed by the statute itself. Eddy v. The People, 218 Ill. 611. The power of the board must be exercised within the authority conferred by the statute and in accordance with its provisions.

Upon the facts averred in the bill the defendants Flynn and Cavanaugh are not within the class of persons contemplated by the act, and, therefore, the Board of Trustees in placing them on the pension list and paying them respectively the amounts alleged in the bill, did not act within the power and authority conferred by the statute. Hence, a court of equity has jurisdiction, at the instance of the complainants, to restrain the board from diverting the pension fund from the purposes for which it was created by the statutes.

The bill, in our opinion, is not multifarious in joining as co-defendants all parties who are attempting to obtain possession of any part of the trust fund through the illegal action of the trustees of the fund in the manner set out in the bill. It is a bill by beneficiaries of the fund seeking to restrain a diversion of the fund from the trust, and it matters not that there are two or more persons who are illegally seeking to obtain portions of the fund. The complainants have a community of interest in the question of law and fact involved

in the litigation, existing or prospective. Edward Hines Lumber Co. v. Scott, 101 Ill. App. 523; Fletcher on Equity Pleading and Practice, sec. 113, page 151. Complainants' rights are based on the trust relation existing between them and the defendant trustees in regard to a particular fund in question, and all the parties to the bill have a common interest touching the matter of the bill, although the defendants claim under distinct titles and have independent interests. United States v. Flournoy Livestock & Real Estate Co., 69 Fed. Rep. 886; Bailey v. Tillinghast, 99 *id.* 801; Kennedy's Heirs *et al.* v. Kennedy's Heirs, 2 Ala. 571; N. Y. & N. H. R. R. Co. v. Schuyler, 17 N. Y. 592; Brown v. Guaranty Trust Co., 128 U. S. 403.

The decree of the Circuit Court sustaining the demurrers as to defendants Benner, Calder, Schmidt and Wilke, and dismissing the bill as to them, is affirmed. So much of the decree as sustains the demurrers of the defendants Flynn and Cavanaugh and the Board of Trustees is reversed with directions to overrule the demurrers of Flynn and Cavanaugh and the Board of Trustees, and for further proceedings consistent with this opinion.

*Affirmed in part; reversed in part with directions.*