## The People of the State of Illinois ex rel. Margaret A. Flynn, Appellee, v. The Board of Trustees of the Firemen's Pension Fund of the City of Chicago, Appellant.

### Gen. No. 31,198.

1. MUNICIPAL CORPORATIONS—*construction of saving provisions of Firemen's Pension Act of 1917.* Under Cahill's St. ch. 24, ¶ 955, preserving to widows of deceased firemen then receiving or entitled to pensions under any previous firemen's pension law the right to receive pensions under the act effective July 1, 1917, the widow of a fireman who became such after the effective date of such act was not entitled to a pension under any firemen's pension law where it was not claimed that she was entitled thereto under the Act of 1917, and her inchoate right under the prior law had not matured when the former law was supplanted by that of 1917.

2. MANDAMUS—*clear right as prerequisite to writ.* Mandamus will not issue where it does not appear that the relator has a clear legal right thereto.

Appeal by defendant from the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1926. Reversed and remanded with directions. Opinion filed February 1, 1927. Rehearing denied February 14, 1927.

FRANCIS X. BUSCH, Corporation Counsel, for appellant; W. ARNOLD AMBERG and ROY S. GASKILL, Assistant Corporation Counsel, of counsel.

MICHAEL F. GIRTEN, for appellee.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

This is an appeal from an order of the circuit court, entered May 19, 1926, overruling respondent's general demurrer (which it elected to stand by) to relatrix's amended petition, filed June 3, 1925, and ordering a peremptory writ of mandamus as prayed to issue

forthwith, commanding respondent to pay to relatrix "the amount of money due as pension payments from June 18, 1918, to the date of the issuance of said writ, together with interest on all deferred or delayed payments and to place the name of said petitioner upon the books, list, record or roll of pensioners, and pay her *at the rate of $45.00 per month* or $540.00 per year" during her lifetime and "as long as she remains unmarried."

According to the allegations of her amended petition, relatrix claims to be entitled to said pension payments as the widow of Frank B. Flynn, who died on June 19, 1918, and who, many years before, had served continuously, and *for more than ten years,* as a member of the Chicago Fire Department, viz, from February 12, 1874, until March 31, 1887, on which lastmentioned date, "by direction of his superiors, he resigned." It is further alleged that on December 1, 1886, he "was severely injured while in the actual performance of duty and became permanently disabled as a result of such injury."

This is the second time the cause has been before us. The original petition, filed on March 18, 1924, was against Francis X. Busch and others, as trustees and officers of the Firemen's Pension Fund. Their general demurrer to the petition was overruled and, they electing to stand by it, the court ordered the writ to issue forthwith, commanding them, as trustees, etc., to pay to petitioner $3,853.33, out of said fund, and *"also the sum of $56.66, each and every month,* beginning April 9, 1924." The trustees appealed and, on March 3, 1923, this Appellate Court reversed the judgment and remanded the cause "with directions to sustain the demurrer and to grant leave to petitioner, if she so desires, to either amend her petition or file an amended petition." (237 Ill. App. 627, opinion not published, case No. 29,484.) On the former appeal two points were urged by appellants as grounds for

reversing the judgment, viz: (a) that the allegations of the original petition were defective and insufficient as against a general demurrer, and (b) that, in any event, the amounts found due and to become due were too large.   In our former opinion we did not discuss the second point further than to intimate that if petitioner was entitled to any pension, it was not in the amounts as awarded.   As to the first point, after calling attention to certain defects, we held that the petition "was lacking in averments of essential facts," and that it did not show on its face a clear right to the writ.

On the present appeal it is contended that the *amended* petition does not show a clear right to the writ, and that the court erred in overruling respondent's general demurrer thereto and in awarding the writ.

It is also alleged in the amended petition that on August 12, 1875, the city council of Chicago passed an ordinance creating a fire department for the city; that by one of the sections (set forth) it was provided that the "present" fire department should be continued; that when the ordinance was passed there was in existence a "paid fire department," of which said Frank B. Flynn was a member by due appointment; and that he was continued as, and became, a member in good standing of the department, as created by the ordinance, and remained such until March 31, 1887.   Reference then is made to the passage by the legislature of an act, approved May 24, 1877, entitled "An Act for the relief of disabled members of the police and fire departments in cities and villages," which, it is alleged, provided for the creation of a pension fund and of a board of trustees to administer it, etc., and which act was amended in May, 1879.   Section 6 of the act, as amended, is set forth in the petition and is as follows (Laws 1879, p. 73):

"When, in the judgment of the board, a sufficient amount shall have accumulated in said fund to justify

the application thereof to the use for which the same is hereby created, if any member of the police or fire departments, while in the actual performance of duty * * *, shall become permanently disabled, so as to render proper his retirement from membership, a sum not exceeding six hundred dollars ($600) per annum, or such less sum as, in the judgment of the board, the fund will justify, shall be paid to such member out of said fund; or if any member, while in the actual discharge of duty shall be killed, or shall die from the immediate effects of an injury received by him while in such discharge of duty, *or shall die after ten years service* in the police or fire departments, and shall leave a widow, * * * a sum not exceeding six hundred ($600) dollars per annum, or such less sum as, in the judgment of the board, the condition of the fund will justify, shall be paid to such widow so long as she shall remain unmarried * * *."

It is further alleged that, at the time of Flynn's resignation on March 31, 1887, he had served in the department "for more than 10 years," and, having become permanently disabled while in the actual performance of duty, he "thereupon became entitled to receive a pension in a sum not exceeding $600 per annum," but that he *"did not at any time apply for nor receive* said pension," although there had accumulated a sufficient amount in the fund justifying the payment thereof; and that *prior* to his resignation he "complied with all the provisions of the pension act and paid into the pension fund all assessments regularly made upon him by the board of trustees, as required by the act and by the regulations of the board, and complied with all rules and regulations established by the board."

Section 7 of said Act of 1877, as amended in 1879, is also set forth, as follows:

"Any person who shall have served in either the police or fire departments of said city or village *for*

*the full term of ten (10) years,* and shall have paid into the fund * * * all assessments regularly made upon him by the board of trustees as required by this act, and the regulations of the said board of trustees passed in pursuance of this act, and shall have complied with all the rules and regulations lawfully established by the board of trustees *in the same manner, as if such person was an active member* in said police or fire department, *may continue his membership* in this organization, and be entitled to the benefits of this fund after he shall have ceased to be a member in either said police or fire department, by complying with all the provisions of this act, relative to the payment of assessments, etc., the same as prior to his ceasing to be a member of said departments, and the widow or children of such person shall be entitled to all benefits hereby secured to other members of this organization.''

It is further alleged that Flynn, *subsequent* to his resignation on March 31, 1887, ''complied with all the provisions of the pension act, paid into said pension fund all assessments regularly made upon him by the board of trustees, as required by the act and by the regulations of said board of trustees, and complied with all rules and regulations established by the board, in the same manner as if he was an active member in said fire department.'' (For what period of time and in what amounts Flynn paid assessments, etc., are not alleged.)

It is further alleged that in May, 1887 *(after* Flynn's resignation) the legislature passed an act, approved May 13, 1887, applicable to cities having a population in excess of 50,000 inhabitants and having a paid fire department, and entitled in part ''An Act to create a board of trustees of the *firemen's* pension fund; to provide and distribute such fund for the pensioning of *disabled* firemen, and the widows and minor children

of *deceased* firemen,'' etc.  Section 9 only of this act is set forth in the petition as follows (Laws 1887, p. 120):

"The *widows* and orphans of *deceased* firemen and *retired* members of the fire department, who are *now entitled to* pension or annuity under the provisions of an act entitled 'An act for the relief of disabled members of the police and fire departments in cities and villages,' approved May 24, 1877, as amended, shall be entitled to the benefits, pensions and annuities provided for by this act: *Provided,* such persons shall thereupon cease to receive pensions, relief or benefits under said act of May 24, 1877.''

It is further alleged that this provision of said Act of 1887 ''continued the rights'' of Flynn, ''and of petitioner as his wife,'' in and to all rights secured by them under the Act of 1877 as amended; that in June, 1917, the legislature passed another Firemen's Pension Fund Act, in force July 1, 1917 (before Flynn's death), providing for such a fund and creating a board of trustees as a body corporate to administer the fund in cities having a population exceeding 200,000 inhabitants, as Chicago then had; that section 10 of said act (not set out in full in the petition) ''provided a pension for *widows,* while unmarried, *in the sum of $45 per month;''* and that section 14 of said act is as follows (Cahill's St. 1923, ch. 24, ¶ 955, p. 699):

''The *widows,* orphans and dependent parents of *deceased* firemen and all *retired* firemen who are receiving *or entitled to* pensions *under any other firemen's pension law* in force in any such city at the time this Act shall become effective, shall be entitled to the benefits and pensions provided for by this Act, and none other, from the time that this Act shall become effective in such city.''

Section 10 of said Act of 1917, referred to in the petition, is in part as follows (Cahill's St. 1923, ch. 24, ¶ 951, p. 698):

"If any fireman shall die from any cause *while in the service,* * * * or if any fireman shall die from any cause during retirement on account of disability *or during retirement after twenty years' service* and while in good standing, as provided in this Act, and shall leave a *widow,* * * * said board of trustees shall direct the payment from such pension fund of the following sums of money monthly:

"(a) to such widow, while unmarried, forty-five dollars, * * *."

It is further alleged that Flynn and petitioner were married on June 19, 1878; that petitioner was his wife continuously thereafter until his death, which occurred on June 19, 1918; that since his death she has remained unmarried; that upon his death she became "the widow of a fireman who died *after ten years' service*" and she "became entitled to a pension under the pension act of 1877, as amended in 1879"; that because upon his resignation in March, 1887, Flynn was entitled to a pension, petitioner, upon his death, "became entitled to a pension under section 14 of said pension act of 1917," and for the reason that "Flynn's right to a pension, under the Act of 1877, as amended in 1879, was kept in force and preserved to him by the acts of 1887 and 1917"; that the amount of the pension to which she is entitled is $45 per month, beginning at his death and continuing during her lifetime so long as she remains unmarried; that she has made a written application or demand to and upon said board of trustees, etc., made a body corporate by said Act of 1917; that it place her name upon the pension roll and pay her said monthly pension, but that it refused to do so and still refuses; and that at the time of Flynn's death in June, 1918, there was, and at all times since there has been, ample money in said pension fund with which to pay to her said pension.

It is further alleged that said board of trustees, etc., never disputed nor denied the truth of the facts, as set

People ex rel. Flynn v. Firemen's Pension Fund, 243 Ill. App. 206.

forth in petitioner's application or demand for a pension, namely, that said Flynn served as a member of the fire department *for more than 10 years;* that he paid into the fund all assessments regularly made upon him by said board and complied with all of its rules and regulations; that while in the performance of duty as a fireman he was injured on December 1, 1886, and became permanently disabled, and that he died on June 19, 1918, leaving petitioner as his widow, who has never remarried; and that said board denied petitioner's application for a pension "solely upon the ground that the provisions of said pension act of 1877, as amended in 1879, are not now binding upon said board."

Counsel for relatrix argues in his brief "that by Flynn's *ten years' employment* in the Chicago Fire Department (thirteen years in fact) back in the days from 1874 to 1887, and his ceasing to be an active fireman and his having been disabled as a result of his employment as such fireman  *  *  *  and his having otherwise complied with the statute (the demurrer admits all this), *Flynn,* under the act of 1877 (as amended), became entitled to a pension; that by the act of 1887 his rights were preserved to him and his wife became qualified to receive a pension after his death; that no amendment or change of the law has had the effect to take away the qualifications of either Flynn or his wife, but, on the contrary, all amendments or changes have preserved to them their rights; and that, accordingly, upon Flynn's death on June 19, 1918, his widow, the relatrix, became entitled to a pension."

After reviewing the allegations of the amended petition (in which in some instances conclusions rather than facts are stated) as well as the acts of the legislature mentioned, we are unable to agree with all of counsel's argument or his conclusion. The question is, under the facts as alleged: Is relatrix, as Flynn's *widow,* entitled to a pension? Under section 6 of the

Act of 1877 (as amended), *had Flynn died* while that act was in force, perhaps relatrix as his widow would have been entitled to a pension because of his *ten years'* service in the fire department. And doubtless this inchoate right in her, if any she had, to receive a pension upon his death, was continued and preserved to her under section 9 of the Act of 1887. But Flynn did not die while either of said acts was in force. And this inchoate right in her to a pension upon his death, under either of said acts, was not a vested right, as against a subsequent change in the law. *(Pecoy v. City of Chicago,* 265 Ill. 78, 80; *Beutel v. Foreman,* 288 Ill. 106, 111.) The Act of 1917 became in force on July 1, 1917, and we think it apparent from a reading of that act that it was the intention of the legislature to make an entire revision of the subject matter relating to firemen's pensions. Under section 10 of that act the widow of a deceased fireman is no longer entitled to a pension because of *ten years'* service of that fireman in the department, but it is provided that, ''if any fireman shall die from any cause *while in the service* * * *, or if any fireman shall die from any cause *during retirement on account of disability* or during retirement *after twenty years service* and while in good standing,'' the widow of such fireman becomes entitled to a pension of $45 per month. It is not claimed in the amended petition that Flynn died ''while in the service,'' or that he died ''during retirement after twenty years service''; nor is it sufficiently alleged or claimed that he died ''during *retirement* on account of disability.'' The claim of relatrix is that, because Flynn served in the department for *ten years,* ending March 31, 1887, she, upon his death in June, 1918, became entitled to a pension under the former Pension Act of 1877 (as amended)—the right to which pension being preserved to her by section 14 of the Act of 1917, which provided that ''the *widows* * * * of *deceased* firemen * * * who are *receiving* or *en-*

*titled to* pensions *under any other firemen's pension law* in force in any such city *at the time this act shall become effective"*; shall be entitled, etc. But, when said Act of 1917 became effective (July 1, 1917), relatrix was not Flynn's *widow* and she was not "receiving or entitled to" a pension under any former pension law, and it follows, we think, that she then had no right to a pension under any other firemen's pension law. It is to the *"widows * * * of deceased* firemen" that such rights are preserved. And we do not think that the cases of *O'Connor v. Trustees Firemen's Pension Fund*, 155 Ill. App. 460, and *Wilke v. City of Chicago*, 212 Ill. App. 414, cited by counsel, are in point. They arose before the Act of 1917 was passed and did not involve pensions of widows of firemen. Furthermore, the right to the writ, as prayed and awarded, is *at least* a doubtful one, and the allegations of the amended petition do not, in our opinion, show that relatrix has a clear legal right to the writ. In such cases the writ should not be awarded. *(People v. Rose*, 225 Ill. 496, 498; *People v. Blair*, 292 Ill. 139, 144; *Quernheim v. Asselmeier*, 296 Ill. 494, 499; *People v. Dever*, 236 Ill. App. 135, 147.) In the *Rose* case, *supra*, it is said: "The writ of mandamus * * * only issues where there is a clear legal right to be enforced or a duty which ought to be performed. It is never issued in doubtful cases. * * * The award of this writ, even in cases where the relator has an undoubted legal right, is in the wise judicial discretion of the court."

Our conclusion is that the circuit court erred in overruling respondent's general demurrer to the amended petition and in awarding the writ. Accordingly, the judgment is reversed and the cause is remanded with directions to the circuit court to sustain said demurrer.

*Reversed and remanded with directions.*

FITCH and BARNES, JJ., concur.