Arthur J. Eddy et al.

v.

Margaret Morgan et al.

*Opinion filed June 23, 1905—Rehearing denied October 12, 1905.*

1. Statutes—*words must be given their usual meaning.* In construing statutes it is the duty of the court to take the words found therein and give to each its usual and ordinary meaning, and not qualify them by introducing other words which would change the effect of the act.

2. Same—*a statute is ordinarily to be given prospective effect only.* With the exception of a certain class of remedial laws, statutes should be so construed as to give them prospective operation only, unless the intention of the legislature to give them retrospective operation is declared in plain, positive and certain terms.

3. Same—*when rule of liberal construction of remedial act can not be applied.* The rule of liberal construction which admits of giving a remedial statute retrospective operation cannot be applied unless there is something in the act itself which indicates that such was the legislative intention.

4. Same—*doubt must be resolved against giving statute retrospective operation.* If, from the reading of a statute, the court is doubtful whether it was the intention of the legislature to give the act prospective or retrospective operation the act must be given prospective operation only.

5. Same—*opinions of legislators as individuals cannot be considered.* While the journals and proceedings of the legislature may be resorted to in construing a statute, the opinions of persons who interested themselves in the passage of the act, or of legislators as individuals, cannot be considered.

6. Pensions—*a pension is not a matter of vested right.* A pension is a matter of bounty, which may be given or withheld at the pleasure of the sovereign power, and is not a matter of contract or vested right.

7. Same—*amendment of 1899 to Police Pension act of 1887 is not retroactive.* The amendment of 1899 to the Police Pension act of 1887 (Laws of 1899, p. 106,) is not retroactive, so as to entitle the widow of a pensioner who died before passage of the amendment, to a pension under its provisions.

8. Same—*when trustees of pension fund are not estopped to drop person from pension roll.* Trustees of the police pension fund,

by placing the widow of a pensioner who died prior to the amendment of 1899 upon the pension roll and paying her a pension for five years upon the theory that the act of 1899 was retroactive, are not estopped by the rule of contemporaneous construction to drop her from the rolls, since the act is not of doubtful meaning in that respect, and the trustees, by construing it as retroactive, exceeded their authority.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

An appeal is prosecuted from a judgment of the Appellate Court for the First District affirming a judgment of the circuit court of Cook county awarding a writ of *mandamus* against appellants. In October, 1904, appellees filed their petition in said circuit court for said writ of *mandamus,* in which it is alleged, in substance:

*First*—That James Morgan was duly appointed and sworn to serve, and did serve, on the regular police force of Chicago for twenty years or more.

*Second*—That he was retired by the police pension board on November 30, 1891, because he had served twenty years or more, and was entitled to a pension under section 3 of the Pension law, and was granted a pension by the board because he was a superannuated officer.

*Third*—That James Morgan died February 21, 1897.

*Fourth*—That appellee Margaret Morgan is his widow and that she has not re-married since his death.

*Fifth*—That an amendment to section 3 of the Pension law of 1887 was passed and approved in 1899, which provided that after the decease of the pensioner the pension shall be paid to the widow, or a child or children under sixteen years of age, etc.

*Sixth*—That this amendment to section 3 was omitted from the act of 1887 by inadvertence and oversight, and that this amendment, so passed in 1899, was intended to cure this omission, and to give the widows, and children un-

der sixteen years of age, the same rights they would have had if the act had read originally as it now reads.

*Seventh*—That the said amendment was passed after repeated efforts on the part of the appellee Margaret Morgan and others, and that each succeeding legislature from 1887 up to 1899 was appealed to to remedy the defect and omission in the original act of 1887.

*Eighth*—That the question of the retrospectiveness of the amendment of 1899 was fully discussed and understood by the members of the General Assembly of 1899, and that the appellee Margaret Morgan and others were present and heard said discussion.

*Ninth*—That the appellees petitioned the legislature at various times to amend the act of 1887 so as to include the widows and children of pensioned officers who had died prior to the year 1899, and that some of the members of the legislature of 1899 were also members of prior legislatures, and that members of the Assembly were familiar with the law and that this amendment was intended to be retrospective.

*Tenth*—That the pension board decided the act was retrospective, and placed appellee Margaret Morgan's name on the pension roll, in pursuance of said amendment, on July 18, 1899, and that she so received and drew her pension up to September 20, 1904, and the board exacted, and she did sign, a waiver to a claim for back pension.

*Eleventh*—That the appellants, the pension board, without notice took her name from said pension roll and refused to pay her pension.

*Twelfth*—That the amount she is entitled to is $47.65 per month.

*Thirteenth*—That a proper demand was made by appellee Margaret Morgan for her pension and said demand was refused by the appellants.

*Fourteenth*—That there is sufficient money in said pension fund with which to pay appellees the pension claimed by them.

In 1877 the legislature. passed an act providing for the creation of a relief fund for the police and fire departments of cities and villages. (Laws of 1877, p. 62.) That act provides a method for raising the fund, creates a board of trustees and provides for the application of it to beneficiaries. Section 6 is the only section that has any application to the questions raised here, and is as follows:

"Sec. 6. When, in the judgment of the board, a sufficient amount shall have accumulated in said fund to justify the application thereof to the use for which the same is hereby created, if any member of the police or fire departments, while in the actual performance of duty, shall become permanently disabled, so as to render proper his retirement from membership, a sum not exceeding six hundred dollars ($600) per annum, or such less sum as, in the judgment of the board, the fund will justify, shall be paid to such member out of said fund; or if any member, while in the actual discharge of duty, shall be killed, or shall die from the immediate effects of an injury received by him while in such discharge of duty, or shall die after ten years' service in the police or fire departments, and while still in the service of the same, and shall leave a widow, or if no widow, any child or children under the age of sixteen (16) years, a sum not exceeding six hundred dollars ($600) per annum, or such less sum as, in the judgment of the board, the condition of the fund will justify, shall be paid to such widow so long as she shall remain unmarried, or to such child or children while under the age of sixteen years."

That section, as is seen, only authorized a retirement on a pension of a member of either of said forces when permanently disabled, and did not extend the benefit of the pension to the widow of the retired officer or fireman. In 1879 the act was amended so it did extend to widows the benefit of the pension their husbands enjoyed while under retirement.

In 1887 the legislature saw fit to provide, by separate acts, for the pensioning of firemen and members of the police

force and to discontinue the further application of the provisions of the previous joint acts. Each of the acts provided for the creation of a relief fund and a board of commissioners and other details not here of importance, and the only questions that arise upon this case relate to the beneficiaries. The act relating to the police fund was approved April 29, 1887, and the act in relation to the firemen's fund was approved May 13, 1887, and both became effective July 1 of that year. (1 Starr & Cur. Stat. 1896, chap. 24, pp. 837, 840.) Section 3 of the act of 1887, in relation to the police fund, provided that when a person had served twenty years on the police force and had reached the age of fifty years he might be pensioned on half pay. Section 4 authorized the retirement of disabled officers on half pay. Section 6 provided that where a member should be killed or die from injuries in the line of his duty his widow should be pensioned to equal one-half his salary, and that after ten years' service if a member of the force died from any cause his widow should be pensioned. But that act did not extend to the widows the benefit of a pension of those dying while in retirement.

The provisions of the act concerning the firemen's fund were somewhat different. Section 7 authorized the retirement on half pay of the firemen who became permanently, physically or mentally disabled by reason of service. Under section 8, if a member was killed or died of injuries received in the line of his duty or from disease contracted by reason of his occupation, or should die from any cause during service or during retirement, there should be paid to his widow $30 a month and to his children under sixteen years of age $6 each, but the total amount to the family should not exceed one-half the monthly salary of the deceased member at the time of his death or at the date of his retirement. Section 10 provided for the retirement of a fireman becoming fifty years of age and serving twenty-two years or more, on a pension equal to one-half of his salary at the time of retirement, and

extended to his widow until her re-marriage the benefit of his pension.

It will be seen that the two acts contain different requirements as to the age and conditions of retirement, and that the latter act extended to the fireman's widow the pension of a retired fireman, while the act touching the police fund did not extend the benefit of a retired policeman's pension.

In 1899 section 3 of the act of 1887, in regard to the police pension fund, was amended so as to read as follows:

"Sec. 3. Whenever any person at time of taking effect of said act *to which this is an amendment,* or thereafter shall be duly appointed and sworn, and have served for the period of twenty years or more upon the regular constituted police force of said city, village or town of this State subject to the provisions of this act, said board shall order and direct that such person, after becoming fifty years of age and his services upon such police shall have ceased, *and all officers entitled to and having been pensioned under said act to which this is an amendment, after the taking effect of this act,* shall be paid from such a fund a yearly pension equal to one-half the amount of the salary attached to the rank which he may have held on said police force for one year next preceding the expiration of said term of twenty years. *And after the decease of such member, his widow or minor child or children under sixteen years of age, if any surviving him, shall be entitled to the pension provided for in this act of such a deceased husband or father, but nothing in this or any other section of this act shall warrant the payment of any annuity to any widow of a deceased member of such police department after she shall have re-married.* That all acts or parts of acts in conflict with the provisions of this act are hereby repealed." (Laws of 1899, p. 101.)

The amendment consisted of adding to the section the portions in italics, and the allegation of the petition and the contention of appellees is, that that amendment was intended to, and does by proper reading, extend to the widows of

members of the police force who were drawing a retired officer's pension the benefit of that pension, although the officer died before the time of the amendment. The contention is that the amendment is and was intended to be retrospective. Upon a demurrer to the petition the circuit court held according to the contention of appellees and granted the writ, and the Appellate Court affirmed that judgment.

JOHN W. BECKWITH, (EDGAR BRONSON TOLMAN, Corporation Counsel, of counsel,) for appellants:

It is not to be supposed that the legislature intended the Pension act of 1899 should have a retrospective operation unless that intention is manifested in the act by the most clear and unequivocal expression. *Knight* v. *Begole,* 56 Ill. 122; *Hansen* v. *Meyer,* 81 id. 321; *People* v. *Thatcher,* 95 id. 109; *Means* v. *Harrison,* 115 id. 248; *Jimison* v. *Adams County,* 130 id. 558; *Benton* v. *Brotherhood of Railroad Brakemen,* 146 id. 570; *Voigt* v. *Kersten,* 164 id. 314; *Bank* v. *Thompson,* 173 id. 593; *Matter of Day,* 181 id. 73; *Richardson* v. *Mortgage Co.* 194 id. 268; *Scamans* v. *Carter,* 15 Wis. 548; *Finney* v. *Ackerman,* 21 id. 271; *United States* v. *Heth,* 3 Cranch, 399; *Grimes* v. *Norris,* 6 Cal. 621; *Ewen* v. *Den,* 24 How. 242.

Appellants are not estopped by reason of a previous pension board having placed appellees' names upon the pension list, since an estoppel cannot arise by an illegal' act, and they have power to act only within the law. *Hibbard* v. *Chicago,* 173 Ill. 91; *County of Cook* v. *Shaffner,* 46 Ill. App. 611; *People* v. *Chicago,* 99 id. 489; *Seeger* v. *Mueller,* 133 Ill. 86.

THOMAS H. OWENS, (JOHN E. OWENS, of counsel,) for appellees:

By the application of well settled rules of law respecting the construction of statutes, the amendatory act of 1899 must be construed retrospectively. *People* v. *Hinrichsen,* 161 Ill. 223; *Castner* v. *Walrod,* 83 id. 171; *Cruse* v. *Aden,* 127 id.

231; Potter's Dwarris, 145; Sedgwick on Stat. and Const. Law, 230; *Brickett* v. *Haverhill A. Co.* 142 Mass. 394; *Loverin* v. *McLaughlin,* 161 Ill. 425; *Bryan* v. *Buckmaster,* Breese, 408; *People* v. *Marshall,* 1 Gilm. 672; *People* v. *Harrison,* 191 Ill. 267; *Hogan* v. *Aiken,* 181 id. 449; *Perry County* v. *DuQuoin,* 99 id. 479; *Holbrook* v. *Nichol,* 36 id. 161.

The statute is remedial in its nature and should be construed retrospectively. *Woods* v. *Soucy,* 166 Ill. 407; *Ross* v. *Barland,* 1 Pet. 655; Sutherland on Stat. Const. secs. 287, 442; *Pease* v. *Fish Furniture Co.* 70 Ill. App. 138.

By the rule of contemporaneous construction appellants are estopped to deny the retrospective operation of the statute. *Packard* v. *Richardson,* 17 Mass. 143; *Himrod Coal Co.* v. *Stevens,* 104 Ill. App. 639; *Bruce* v. *Schuyler,* 4 Gilm. 221; *Mathews* v. *Shores,* 24 Ill. 27; *Harrison* v. *People,* 97 Ill. App. 421; *People* v. *Loewenthal,* 93 Ill. 191; *Comstock* v. *Cover,* 35 id. 470.

In construing the statute the court will regard existing circumstances or contemporaneous conditions; also the objects sought to be obtained by the statute and the necessity for its adoption. *People* v. *Kipley,* 171 Ill. 44; *Preston* v. *Bowder,* 3 Peters' Cond. Rep. 508; *Siemens* v. *Seilers,* 123 U. S. 276; *Railroad Co.* v. *People,* 143 Ill. 434; *People* v. *Greer,* 43 id. 213; *Maus* v. *Railroad Co.* 27 id. 77.

Mr. JUSTICE RICKS delivered the opinion of the court:

The facts relating to the claims of the appellees other than Margaret Morgan are not set out or mentioned in the abstract or briefs, and in our consideration of the case we will confine ourselves to the facts as disclosed and relating to the case of Mrs. Morgan. James Morgan, her husband, was a police officer of Chicago more than twenty years and was upwards of fifty years of age on November 30, 1891, and was retired as of that date from active duty on a pension of $50.50 a month, under the act of 1887. He died Febru-

ary 21, 1897. He drew his pension from the date of retirement to the date of his death. Neither at the time he was placed upon the pension roll nor at any time between that time and his death was there any law conferring upon his widow the right of pension. It is claimed that the act passed in 1899, more than two years after the death of the husband, conferred the right of the pension of her husband upon Mrs. Morgan.

The power of the legislature to enact a law that should have a retrospective effect, so as to confer upon the appellee Mrs. Morgan the pension fund, is not questioned. The contention of appellants is that the legislature, by an act of 1899 invoked by appellees, did not confer that right in either clear or apt language, but that, taking the construction of the act most favorable to appellees, the court would still remain in doubt, and that in such a case the act should be held operative *in futuro*. To this position of appellants appellees reply that the act by its terms does clearly confer the right, but that if it does not and should be regarded as doubtful from the reading of the act itself, it is a remedial act, and being such, the doubt should be resolved in favor of appellees, and that to aid in the determination of the proper rule in case of doubt the court may resort to contemporaneous construction, the circumstances surrounding the passage of the act, the object to be attained or the remedy and the necessity for it.

We are unable to find in the words or provisions of the act that which satisfies our minds that it was the intention of the legislature that it should have a retrospective effect. Section 3, alone, of the act of 1887 was amended, and the legislature saw fit to preserve to the policemen then in service the rights that had accrued by virtue of the act of 1887, and to confer upon the widows that should survive such officers the right they had not before that time had to succeed to the pension of their deceased husbands who had died in retirement. We may say the act went further, and preserved the rights not only of the officers in active service, but of the

officers drawing pensions under retirement by virtue of the act of 1887. But to say that where a retired officer had died while drawing a pension and previous to the amendment, it is the intention of the act to confer the pension her deceased husband had been drawing, or any pension, upon his widow, is more than we are able to do.

The provision in the later act is carefully guarded by the reference to things done and events having taken place under the act of 1887 by use of the expression, "said act to which this is an amendment." The first part of the act relates to the qualifications of the officers for retirement on a pension and specifies those requirements, and is followed by the italicized words found in the body of the section, "and all officers entitled to and having been pensioned under said act to which this is an amendment, after the taking effect of this act," shall be paid, etc. Are the words "after the taking effect of this act" to be given effect? If so, it would seem that they only have reference to consequences of the act or things that shall follow its passage, and not to things that had already taken place,—to rights that had already accrued and been lost for want of a provision covering them. The last clause of the act or section, and the one under which the appellees claim, begins, "and after the decease of such member, his widow," etc. Clearly those words do not denote an intention on the part of the legislature to confer rights upon the widows of members dead before or at the time of the passage of the act. If the language had been, "and any member having died," the intention of the legislature might from such language be held to be retrospective. The argument that the relief of appellees was a purpose of the act would strike us with more force if there were not a well defined purpose expressed in the act itself, by the amendment, that the widows of retired pensioned officers would succeed to the rights of the pensions drawn by their husbands who should die after the passage of the act. It affected all retired officers living at the time the act went into force.

The argument of counsel that certain words added to the act or placed in the body of it that were not found in the original section evince the intention of the legislature to give it retrospective effect does not seem convincing to us. It is said that the last clause might have been added to the original section if it were intended to benefit only the widows of officers dying after the act. We think the legislature advisedly inserted the words in italics in the body of the original section, as otherwise confusion might have arisen as to the rights of officers who had been serving under the act of 1887. By our constitution the amendment must propose an entire section, and not merely an addition to it by reference. The section as amended indicates to us that the legislature, in complying with that requirement, wanted to preserve the rights of the officers who were serving under the original act.

In the construction of statutes it is the duty of the court to take the words found in the statute and to give to each its ordinary, usual meaning. We are not permitted to qualify words there found by introducing other words which would change the effect of the act, to make it comport more nearly with what we think it ought to be. As was said by Mr. Justice Tindall: "It is the duty of courts to confine themselves to the words of the legislature, nothing adding thereto, nothing diminishing. We must not import into an act a condition or qualification which we do not find there." (Dwarris on Stat. 200.) Another canon of construction is, that statutes are to be so construed as to be given a prospective effect only, unless the will of the legislature to give it a retrospective effect is declared in terms so plain and positive as to admit no doubt. *Thompson* v. *Alexander,* 11 Ill. 54; *Cleary* v. *Hoobler,* 207 id. 97; Cooley's Const. Lim. (7th ed.) 529; *Bruce* v. *Schuyler,* 4 Gilm. 221.

Appellees concede that the latter rule, as we have stated it, is sound and generally applicable, but it is said that the statute in question is a remedial statute, and for that reason should be construed retrospectively. There are various kinds

of remedial statutes, and those statutes with relation to matters of procedure and which affect the remedy alone are frequently, if not usually, so construed as to affect rights of action existing at the time of their passage, or rights of action accruing upon contracts or growing out of transactions had before the passage of the act. Such was the case in *Woods* v. *Soucy,* 166 Ill. 407, cited by appellees. The act in question is remedial, as being contra-distinguished from penal acts, but is not of a class of acts that are ordinarily given retrospective effect. The general rule that a statute shall be given a prospective operation only, unless the contrary intent appears, is as applicable to the statute under consideration as to any other class of statutes. But in some instances in the application of remedial statutes the rule is applied with less strictness. (26 Am. & Eng. Ency. of Law, —2d ed.—698.) But the rule of liberal construction is never carried to the extent of giving the act retrospective effect unless there is something in the act itself which indicates the intention to do so, as where the imperfection of the language used and literal construction might defeat the intention expressed. (*Marsh* v. *Chesnut,* 14 Ill. 223; *Thompson* v. *Alexander, supra.*) If, however, the intention to give the act a retrospective effect is not so clearly found in the act as to satisfy the court that such was the intention, or if, from the reading of the act, the court is doubtful whether such was the intention, the doubt must be resolved against the retrospective effect of the act and the act must be given prospective effect only. (*Thompson* v. *Alexander, supra; Cleary* v. *Hoobler, supra.*) We think there is nothing in this act to indicate an intention on the part of the legislature of giving it a retrospective effect. If there is, it is of so slight a character that the court would remain in doubt if such were the intention.

We do not regard as important the allegation of the petition that efforts were made to have an act passed before and at the time of the passage of this act that should have the

retrospective effect contended for, and that in the opinion of certain legislators such was the effect of the act. While journals and proceedings of the legislature are sometimes looked to in an endeavor to ascertain a proper construction of the statute, so that the court may have before it what is authentic that surrounded the enactment of the law, we are aware of no authority, and none has been pointed out, where the action of the lobby or the opinion of the legislators as individuals has been taken into account. In fact, we understand the rule to be otherwise and that such matters are inadmissible. (6 Am. & Eng. Ency. of Law,—2d ed.—638.)

Appellees, in their argument, remind us that we are to consider the old law, mischiefs and inconveniences introduced by it, and the remedy proposed by the amendatory law. This, doubtless, is a correct statement of the rule in all cases where it is applicable, but we are unable to say that the mischiefs or inconvenience contended for by appellees was such as the legislature did take into account or should have taken into account or that they were trying to remedy. We think the act did supply a deficiency that was quite material, and because it did not extend further and bring within this provision the case of appellees it does not necessarily follow that it fell short of its purpose. Appellees argue this case as though it were a matter of contract or vested right, while, in fact, it is a mere matter of largess or bounty. A pension is a bounty springing from the graciousness and appreciation of sovereignty. It may be given or withheld at the pleasure of a sovereign power. Because one is placed upon a pension roll under a valid law is no reason why that law may not be repealed and the pension cease. *Walton* v. *Cotton,* 19 How. 355; *Frisbee* v. *United States,* 157 U. S. 160; 26 Am. & Eng. Ency. of Law, (2d ed.) 658.

It is also insisted that as the pension board, shortly after the passage of this act, construed it to be retrospective and placed appellees on the pension roll and suffered them to remain there for about five years, appellants are estopped or

216—29

precluded by the rule of contemporaneous construction to deny the right of appellees. The trustees of the police pension fund were municipal officers dealing with municipal funds, and, so far as relates to appellees, we think exceeded their authority in granting them a pension upon the theory that the act was retrospective. There is no principle of estoppel involved. Appellees were simply given a pension to which they were not entitled, and it was paid for a time, when the board that granted it (whether constituted of the same persons or others is not material) became doubtful of its former action and dropped appellees from the pension roll. In order that the rule of contemporaneous construction can be invoked it must have continued for a long time and the construction must have been uniform. So far as appears from this record the act never received but one construction, and that was in 1899. Whether any person other than the board passed upon it does not appear. The municipalities have law officers who may be called upon by other officers for instructions in the discharge of their duties, and it is not alleged that any law officers or any court construed this statute according to the contention of appellees. Five years' practice is not a long time, in the case of a statute of slight application, to be insisted upon as bringing it within the theory of contemporaneous construction. Furthermore, the rule has no application unless it can be said that the statute is ambiguous or of doubtful meaning. (Am. & Eng. Ency. of Law,—2d ed.—633, 634.) We are unable to reach the conclusion that this statute is so doubtful or its language so ambiguous that the rule contended for should be applied.

Appellees were doubtless worthy objects of the bounty of the State or municipality if the legislature had seen fit to so provide. We think it has not done so, and that the judgments of the circuit court and Appellate Court are wrong and should be reversed, which is done. We see no occasion for remanding the cause.          *Judgment reversed.*