The People of the State of Illinois ex rel. Frances E. Langan, Appellee, v. J. C. Hansen et al., Appellants.

Gen. No. 33,037.

Opinion filed March 26, 1929.

Samuel A. Ettelson, Corporation Counsel, for appellants; George F. Mulligan, Assistant Corporation Counsel, of counsel.

William McKinley and Paul E. Price, for appellee.

Mr. Presiding Justice Gridley delivered the opinion of the court.

In a mandamus proceeding, after a trial without a jury on May 2, 1928, the court ordered the writ to issue commanding the respondents (constituting the retirement board of the Policemen's Annuity and Benefit Fund of the City of Chicago) "to forthwith pay to the relatrix, Frances E. Langan, a pension at the rate of $600 per year, payable in monthly installments of $50, . . . which the court finds the relatrix is entitled to receive pursuant to the provisions of the statutes in such cases made and provided, said payments to commence as of April 1, 1926, the date upon which payments to the relatrix were discontinued, and to continue the payment of said pension to the relatrix during her lifetime without interruption, all in accordance with the terms and conditions prescribed in the legislative act governing the Policemen's Annuity and Benefit Fund of the City of Chicago; and . . . to forthwith reinstate and restore the name of Frances E. Langan to the pension roll," etc. From this order or judgment the present appeal is prosecuted.

In the petition, filed August 20, 1926, a portion of section 6 of the Police Pension Fund Act of 1887, as amended, Cahill's St. ch. 24, ¶ 832, is set forth, as follows:

"Whenever any policeman shall die *after ten years' service* and while still in the service of such city, village or town, as a policeman, leaving a widow, or child or children under the age of sixteen years, then upon

satisfactory proof of such facts made to it, said board shall order and direct that a pension of one-half the salary, not exceeding the sum of $900, shall be paid to such widow, or if there be no widow, then to such child or children until they shall be sixteen years of age, said pension to cease upon marriage, as provided above.''

There also are set forth portions of sections 3, 5 and 12 of the Police Pension Fund Act of 1915, as amended, Cahill's St. ch. 24, ¶¶ 841, 843 and 850, applicable to cities of over 200,000 population, and portions of section 50 of the Policemen's Annuity and Benefit Fund Act of 1921, Cahill's St. ch. 24, ¶ 902, applicable to such cities, as follows:

''All claims for any annuity, pension or other benefit from such police pension fund which are pending or ungranted on the first day in the month of January of the first year after the year in which this Act shall come into force and effect in such city, shall be allowed or disallowed by said retirement board according to the provisions of'' said act of 1915, ''as subsequently amended, and those which shall be allowed shall be paid from the annuity and benefit fund herein provided for.''

The petition does *not* mention section 6 of said Act of 1921, *as amended in 1925,* Cahill's St. ch. 24, ¶ 857, which is in part as follows:

''The retirement board shall have the power and it shall be the duty of said retirement board to: . . .

''(g) Consider and pass upon all applications for annuities, pensions, and benefits; authorize the payment of any annuity, pension, or benefit whether such annuity, pension or benefit was or shall be granted under and by virtue of the provisions of this Act, or under and by virtue of the provisions of any other Act or Acts relating to police pensions, heretofore in force and effect in such city and which have been superseded by this Act; *inquire into the validity and legality of*

*any grant of annuity, pension, or benefit* paid from or payable out of the annuity and benefit fund herein provided for, whether such annuity, pension, or benefit shall have been or shall hereafter be granted in accordance with this Act or in accordance with any other Act or Acts relating to police pensions in force and effect in such city prior to the date upon which this Act shall have come in force and effect therein; *increase, reduce, or suspend* any annuity, pension, or benefit to be paid from the annuity and benefit fund herein provided for whenever such annuity, pension, or benefit or any part thereof was secured or granted, or the amount thereof fixed, as the result of misrepresentation, fraud, *or error; provided, however,* that no such annuity, pension, or benefit shall be reduced or suspended until the annuitant, pensioner, or beneficiary concerned shall first be notified of the proposed action and be given an opportunity to be heard concerning such proposed action.''

It is alleged in the petition in substance that the relatrix, a resident of Chicago, is the widow of Edwin P. Langan, who in his lifetime, and at the time of his death *on September 4, 1906,* was a member of the regularly constituted police force of the City of Chicago; that when his death occurred the Act of 1887 as amended was in force; that he had been a ''police operator'' in the service of the city ''continuously for more than ten (10) years and until the time of his death''; that at that time a controversy existed as to whether a police operator was within the law relating to the payment of police pensions; that thereafter the Supreme Court of Illinois decided that a police operator was in fact a policeman within the meaning of the law; that thereafter the relatrix made application to the trustees of the Police Pension Fund for a pension; that her application was denied upon the ground that her husband ''had not served for more than ten (10) years''

prior to his death; that thereafter she employed counsel for the purpose of commencing proceedings against the retirement board to compel the payment of back pensions in the amount of $7,950; that on December 8, 1922, the board compromised her claim and paid to her the sum of $6,500, and that but for this settlement she would have proceeded to enforce her claim in the courts; that the settlement and compromise "was a valid accord and satisfaction" of the differences then existing between her and the board; that the board placed her on the pension roll at $50 per month, and paid her a pension at that rate for more than three and one-half years; that at a meeting of the board, held on April 15, 1926, it revoked the pension as of April 1, 1926; that the settlement, effected in December, 1922, "was made in entire good faith and after the board was fully advised in the premises and cognizant of all the facts and circumstances," and that "no fraud, circumvention or undue influence of any kind or character was practiced upon the board"; that on April 15, 1926, the board "was wholly without power or authority either to review its acts so taken at the meeting in December, 1922, or to revoke or repudiate the agreement so entered into as aforesaid"; and that since the revocation of the pension the relatrix has repeatedly demanded that the board restore her name to the pension roll as of April 1, 1926, "from which it has wrongfully and unlawfully been removed," but that the demands have been refused. The prayer of the petition is that a writ of mandamus issue, commanding the respondents (the present members of the retirement board) to pay to the relatrix a pension at the rate of $600 per year, being the amount to which she is entitled pursuant to the statutes and pursuant to said settlement agreement, etc.

On September 10, 1926, the respondents filed a plea alleging in substance that at the time Edwin P. Langan

met his death he was not in the performance of any act or acts of police duty, and that his death was not the result of any injury received while in the performance of any act of police duty; that at the time of his death he had *not* rendered "10 years of service" in the police department of Chicago; that the award of a pension of $50 per month, granted to the relatrix on December 8, 1922, "was granted *in error*"; that a hearing was granted to the relatrix in the matter of the revocation of the pension on April 15, 1926; and that at its conclusion the grant of pension theretofore made was revoked by these respondents, pursuant to power given to them by said Act of 1921, as amended.

Two questions in our opinion are presented for decision upon the evidence contained in the present transcript,—one a question of fact and the other a question of law. They are in substance: (1) When Edwin P. Langan, husband of the relatrix, met his death while in the service of the police department of the city on September 4, 1906, had he been in such service for a period of 10 years or more? (2) Assuming that the evidence shows that he had *not* been in such service for such a period of time, had the members of the retirement board (respondents herein) the power and authority, under the evidence and by virtue of existing statutes, to revoke the pension previously granted to the relatrix on December 8, 1922?

It was conceded upon the trial that Langan was in the service of the police department from March 1, 1895, until April 18, 1895; that he was appointed *under civil service* on October 16, 1897; and that he thereafter continued in the service, less a 10-days' suspension, until his death on September 4, 1906. The real issue of fact is whether he was in the service at any time from April 18, 1895, until his appointment under civil service on October 16, 1897. If not, it is manifest that his total service in the department did not aggre-

gate 10 years, but was a few days less than 9 years. In the draft order or judgment appealed from the court made the specific finding that "Edwin P. Langan became a member of the police force of said city on March 1, 1895, and thereafter *continuously* remained a member in good standing until the day of his death on September 4, 1906, thereby serving continuously in the police department of said city more than 10 years." After a careful review of the testimony,. and of the documentary evidence bearing upon the question, we are of the opinion that the court's finding is against the clear preponderance of the evidence.

For the relatrix, the elderly mother of Langan, Anna G. Langan, testified that he worked "continuously" in the police department as an operator from the time he first was appointed in March, 1895, until his death in September, 1906. Her entire testimony discloses that this statement was based largely upon what she had heard. Catherine Langan Bourke, sister of Langan and 9 years old in 1895, and a resident of Iowa at the time of the trial, testified by deposition to the same effect. Her cross-examination, however, disclosed that for a period of 6 weeks only in March and April, 1895, she carried her brother's luncheons to him at the police station where he then was working, and that she had no knowledge as to where he worked after April, 1895, beyond what she had been told. Thomas J. Joyce, assistant chief operator in the police department since July, 1889, testified that Langan worked as a police operator in March and a part of April, 1895, but he stated, upon cross-examination that "I don't know of my own knowledge any period he served *after April, 1895,* until he took the civil service examination in 1897, without seeing the record." Prior to the trial the relatrix served notice upon the respondents to produce (a) the original written application made by Langan in 1897, when he applied for a position as police

operator under civil service; (b) the original written application, sworn to by the relatrix and filed with the board on November 29, 1922, in which she asked that a pension be granted to her, etc.; (c) the minutes of the meeting of the board of December 8, 1922, when a pension was granted to her, etc.; and (d) all "documentary evidence" that was considered by the board at the hearing in December, 1922, which resulted in the granting to the relatrix of a pension, etc. All these papers, documents and records were produced and tendered to the attorney for the relatrix who, after examining them, introduced all of them in evidence *except* the first mentioned (Langan's application for position under civil service made in 1897). The minutes of the meeting of the board of December 8, 1922, are as follows: "The application of Frances Langan was presented; affidavits from Thomas J. Joyce, assistant chief operator, and others, *that supplied time not on record of police department* were read, on motion made, seconded and unanimously carried, application was granted and the attorney instructed to adjust amount of back pension." Joyce's affidavit, dated December 5, 1922, stated in substance that Langan was employed as a police operator "prior to the enactment of the Civil Service Law"; and that "official records show" that Langan, prior to the Civil Service Law taking effect, was appointed on March 1, 1895, and "subsequently reappointed October 16, 1897, and in continuous service thereafter until his death." No statement is made in the affidavit that Langan served *after* April 18, 1895, and *before* he became a civil service appointee in October, 1897. The "other affidavits" referred to in the minutes are those of said Anna G. Langan and Michael Langan, respectively mother and father of Langan, and were sworn to on November 29, 1922, and based upon "recollection, information and belief." They were to the effect that Langan's total

length of service as a police operator was "12 years, 6 months and 3 days." Another paper is the certificate of Si Mayer, secretary of the department of police, and sworn to by him on December 4, 1922, purporting to contain Langan's record of service, as shown by the records of the department. It reads in part: "Date of appointment—March 1, 1895. Date of termination of service—Sept. 4, 1906. Total length of service—*8 years, 11 months, 26 days.* Cause of termination of service—Death."

For the respondents, on the issue as to Langan's total length of service, other records of the department were introduced, including Langan's application, sworn to by him on May 20, 1897, for position under the Civil Service Law. It appears from answers to certain questions therein contained that he stated that he had worked as a police operator in 1895; that he had been "discharged" from the position in "May, 1895"; and that during the past year he had been "employed at A. H. Revell Co." From the police "time roll" record for the month of April, 1895, it appeared that he had served 18 days and had been "discharged." In the record, or "register of police dept. employees," which was started in the fall of 1895 and referred to employees in the department on and after July 1, 1895, the name of Langan does not appear as an employee between July 1, 1895, and October, 1897. Thomas J. Joyce again was called as a witness, this time for respondents, and he testified in substance that he had examined all the time rolls of the department and could not find Langan's name on any of the rolls of the five precincts, in which the relatrix claimed he had worked, subsequent to April, 1895, and until Langan began working under civil service. The testimony of other witnesses, called by respondents, tended to show that Langan was not working in the department between April, 1895, and October, 1897. From all the evidence we think it clearly appears that

Langan's total service in the police department of the city did not exceed 9 years.

As to the second question, we are of the opinion that, under the law and particularly under the above-quoted provisions of subsection (g) of section 6 of the Policemen's Annuity and Benefit Fund Act of 1921, as amended in 1925, Cahill's St. ch. 24, ¶ 857, the retirement board had ample power and authority on April 15, 1926, to revoke the pension previously granted to the relatrix on December 8, 1922. It is clear to us that the granting of the pension was brought about through "error." A pension board has no powers beyond those given to it in the act creating it, and has neither the right nor the power to pay moneys to anyone not within the terms of the act fixing the conditions under which a pension is payable. (*People v. Hanson,* 330 Ill. 79; *McCann v. Retirement Board,* 331 Ill. 193.) When in April, 1926, the board ascertained that Langan had not served in the police department of the city for 10 years prior to his death, and that his widow because of this fact was not entitled to the pension which had previously been granted to her through error, it became and was the duty of the board to cease paying the pension to her. (*Eddy v. Morgan,* 216 Ill. 437, 449; *O'Connor v. Board of Trustees,* 155 Ill. App. 460, 479.) And, in the *Hanson* case, *supra,* it is decided that the doctrine of accord and satisfaction is not applicable to pension cases. The court in that case says (p. 91): "There can be no doubt that the settlement agreement of September, 1921, was not authorized by the law, and the board has no power to make an agreement contrary to the statute which would bind the trust fund under the board's control by the rule applicable to accord and satisfaction in claims arising out of contracts or torts."

Counsel for the relatrix urge that the present record does not affirmatively disclose that, before the board revoked the pension on April 15, 1926, the relatrix was

notified of the proposed action and given an opportunity to be heard, as provided in subsection (g) of section 6 of the Act of 1921, as amended. This point is raised for the first time in this Appellate Court and is without merit. It does not appear that such notice was *not* given. The presumption is that the board pursued the course pointed out by the statute and gave notice, etc. (*Dragovich v. Iroquois Iron Co.*, 269 Ill. 478, 482; *People v. Walsh*, 96 Ill. 232, 252.)

Our conclusion is that the order or judgment of May 2, 1928, should be reversed and it is so ordered.

*Reversed with finding of fact.*

SCANLAN and BARNES, JJ., concur.

Finding of fact. We find as a fact in this case that when Edwin P. Langan died on September 4, 1906, he had not been in the service of the police department of the City of Chicago, as a police operator, for a period of ten (10) years.