Irene Bowden, Petitioner-Appellant, v. Wallace Flannery et al., Trustees of the Police Pension Fund of City of Kankakee, Illinois, Respondents-Appellees.

Gen. No. 11,098.

Second District, First Division.

August 5, 1958.

Released for publication August 22, 1958.

Edward A. McIntire, of Kankakee, for petitioner-appellant.

Herman W. Snow, of Kankakee, for respondents-appellees.

PRESIDING JUSTICE DOVE delivered the opinion of the court.

On July 30, 1953, Irene Bowden filed her petition in the circuit court of Kankakee County praying for the issuance of a writ of mandamus directing the Board of Trustees of the Police Pension Fund· of the City of Kankakee to forthwith pay to petitioner a pension equal to one-half of the amount of salary attached to the rank which her deceased husband, Gilbert C. Bowden, held on the police force of the City of Kankakee for one year immediately prior to his death.

After the defendants had answered, the plaintiff filed a reply and a motion for judgment on the pleadings. This motion for judgment was heard and taken under advisement and while under advisement, the par-

ties entered into a stipulation and the case was submitted to the court upon the pleadings and stipulation resulting in an order denying plaintiff the relief sought and dismissing her petition. To reverse that judgment plaintiff appeals.

It was stipulated that Gilbert C. Bowden was the husband of appellant and died on October 15, 1952, and at that time was a member of the police force of the City of Kankakee; that from May 15, 1935, decedent served continuously through March 3, 1945, on said police force and also from July 24, 1950, continuously through October 6, 1950, and also from June 26, 1951, continuously through October 13, 1952; that on April 14, 1953, satisfactory proof of the foregoing facts was presented to the board of trustees of the police pension fund, and that board ordered and directed a pension equal to one-half of the salary of decedent for the year preceding his death, be paid to his widow, effective December 1, 1952, upon payment by his widow of contributions equivalent to the amount which would have been contributed by decedent had he contributed to said pension fund during his periods of service following March 3, 1945.

It was further stipulated that on April 28, 1953, the board of trustees of said pension fund held a special meeting without notice to Irene Bowden; that at this special meeting the chief of police of the City of Kankakee testified that decedent on July 24, 1950, was employed as a temporary patrolman and was re-appointed such temporary patrolman every thirty days by the chief of police or by the acting chief of police of the City of Kankakee. It was further stipulated that at this special meeting held on April 28, 1953, the board of trustees reconsidered its order of April 14, 1953, reversed the same and declined to pay any pension to appellant, finding as a fact that Bowden, had been re-appointed as a temporary patrolman every thirty

301

days commencing July 24, 1950 continuously through October 16, 1950 and commencing June 21, 1951 and continuing through October 13, 1952.

It was further stipulated that the necessary funds to pay a pension to appellant were available and that the duties of decedent throughout his service as a member of the police force were the same as performed by regular patrolmen; that the average monthly salary received by decedent during the period of one year prior to his death was $257.83 and that decedent contributed to the police pension fund regularly and continuously from May 15, 1935, through March 3, 1945, but not thereafter.

It was further stipulated that from May 15, 1945, through October 4, 1951, Gilbert C. Bowden made repeated applications for reinstatement to the Police and Fire Commission but these applications were never approved nor was any physical examination ever provided for or taken by him and that because of such lack of reinstatement by the Police and Fire Commission his contributions to the police pension fund were neither deducted from his salary nor accepted by the commission; that from July 24, 1950, his name was carried on the pay roll records of the City of Kankakee under the description of "extra patrolman," and a copy of the pay roll voucher for the last half of the month of April 1952 which reflects the manner in which Bowden was carried on the pay roll records of the City of Kankakee was attached to the stipulation and made a part thereof.

Appellant contends that her husband, at the time of his death, was not a temporary employee of the city but a member of the police force of the City of Kankakee and had been a member thereof for more than ten years; that the original decision of the board of trustees entered on April 14, 1953, so found and its order directing the payment of a pension to appellant

was final and irrevocable and that the subsequent order of April 28, 1952, reversing that order was void and of no effect.

Counsel for appellees insist that at the time of his death, Bowden was a police officer appointed for temporary duty only within the meaning of Section 19 of the Pension Act (Ill. Rev. St. 1951, Chap. 24, par. 904f). Counsel insist that decedent had not been a member of the police force for the requisite number of years and as decedent had not qualified himself for the payment of a pension to his widow under the statute, the trial court did not err in dismissing the petition. Counsel further insist that certiorari is the proper remedy available to appellant in the event appellees proceeded illegally or exceeded its authority on April 28, 1953, when the board reconsidered its action of April 14, 1953, and denied a pension to appellant.

From the pleadings and the stipulation of the parties, it appears that Bowden's service as policeman covered three periods. The first, which ended in 1945, fell short by two months and twelve days of the required statutory period of ten years; that five years later, in the summer of 1950, he served by appointment of the chief or acting chief of police as a temporary patrolman for two months and thirteen days and commencing in June, 1951, he again served, by appointment of the chief or acting chief of police, as temporary patrolman continuously to the time of his death. It further appears that these temporary appointments were never approved by the Police and Fire Commission of the City of Kankakee and that Bowden's repeated applications for reinstatement as a member of the police department were never approved by the commission and after March 3, 1945, decedent made no contributions to the police pension fund.

Kankakee is a city of more than 5,000 and less than 200,000 inhabitants and its police pension fund was

303

created and is being administered according to the provisions of the Act providing for the setting apart, formation and disbursement of a police pension fund approved June 14, 1909, as amended. (Ill. Rev. Stat. 1951, chap. 24, secs. 892–904g inc.)

Section 1 of that Act provides for the creation of the pension fund and directs that 5 per cent of the monthly salary of each member of the police department shall be set apart by the treasurer of the city and become a part of the police pension fund. This section further provides that "policeman" or "policemen," as used in the Act, shall include all persons employed in the police department or service of the city, "provided, however, that no such policeman who has not contributed to the police pension fund during the entire period of his service shall be entitled to receive any benefits under the terms of this act unless (a) he shall make written application to the board of trustees hereinafter provided for to come under the provisions of this Act; (b) he shall be found upon the examination of a duly licensed physician selected by said board of trustees to be physically and mentally fit to perform the duties of a policeman; and (c) he shall pay to the fund a sum equal to the amount he would have paid had deductions been made from his salary during the whole of his such period of service."

Section 2 of the Act provides for the creation of a board of trustees whose duty it is to disburse the pension fund and designate the beneficiaries thereof. The applicable portion of Section 6 of the Act provides that whenever any member of a police force shall die after ten years service therein and while still in the service of the city, leaving a widow, then upon satisfactory proof of such fact being made to the board, the board shall order and direct that a pension equal to one-half of the amount of salary attached to the rank which such policeman may have held on such police force for

one year immediately prior to his death, shall be paid to such widow.

Section 10 of the Act provides for the organization of the board and directs that the board shall hold quarterly meetings and special meetings upon the call of the president. This section provides that the board shall issue certificates signed by its president and secretary to the persons entitled thereto of the amount of money ordered paid to such persons from said fund by said board which certificates shall state for what purpose said payment is made.

Section 11 confers upon the board the exclusive control and management of the pension fund and directs the city treasurer to place all moneys belonging to this fund to the credit of the fund subject to the order of the board of trustees. Section 19 of the Act provides that nothing in the Act shall apply to special police officers or police officers appointed for temporary duty only, nor to temporary appointees.

People ex rel. Langan v. Hansen, 252 Ill. App. 212, cited and relied upon by appellees was an appeal from an order of the Superior Court of Cook County in a mandamus proceeding instituted by the widow of Edwin P. Langan directing the retirement board of the Policeman's Annuity and Benefit Fund of the City of Chicago to reinstate and restore relator's name to the pension roll. It appeared that relator's husband died on September 4, 1906, and on December 8, 1922, the board paid her $6,500 in settlement of her pension claim and placed her on the pension roll at $50 per month and paid her a pension at that rate for more than three and one-half years. It further appeared that on April 15, 1926, the board revoked the pension on the ground that it erred when it placed her name on the pension roll on December 8, 1922. The Appellate Court stated that two questions were presented by the record for decision. First, had Edwin P. Langan been

in the service of the police department for a period of ten years or more when he met his death in the service of the police department and, second, assuming that he had not been in such service for such a period of time, had the retirement board the power and authority, under the evidence and by virtue of existing statutes, to revoke the pension previously granted to Langan's widow on December 8, 1922.

The court, in the Hansen case, reviewed the evidence and found that Langan's total service did not aggregate ten years but was a few days less than nine years. As to the second question, the court held that under the provisions of sub-section g of section 6 of the Policemen's Annuity and Benefit Fund Act of 1921, as amended, that the retirement board had ample power and authority on April 15, 1926, to revoke the pension previously granted on December 8, 1922. In the course of its opinion, the court said: (p. 221) "It is clear to us that the granting of the pension was brought about through error. A pension board has no powers beyond those given to it in the act creating it, and has neither the right nor the power to pay moneys to anyone not within the terms of the act fixing the conditions under which a pension is payable. (People v. Hanson, 330 Ill. 79; McCann v. Retirement Board, 331 Ill. 193.) When in April, 1926, the board ascertained that Langan had not served in the police department of the city for ten years prior to his death and that his widow, because of this fact, was not entitled to the pension which had previously been granted to her through error, it became and was the duty of the board to cease paying the pension to her. (Eddy v. Morgan, 216 Ill. 437, 449; O'Conner v. Board of Trustees, 155 Ill. App. 460, 479.)"

The Hansen case arose under the Policemen's Annuity and Benefit Fund Act of 1921, which authorized the retirement board to suspend any pension granted as

the result of misrepresentation, fraud or error, provided the pensioner or beneficiary be first notified of the proposed action. The instant proceeding arose under the Police Pension Fund Act of 1909 and contains no provisions for reviewing, reversing or rescinding any action or order previously entered and for that reason counsel for appellant insists that the order of April 28, 1953, is void which leaves in full force and effect the previous order entered on April 14, 1953. We do not think that this necessarily follows.

■ ■ The board of trustees of this pension fund is an administrative agency vested with extensive authority and exercises quasi-judicial powers. (Eddy v. People ex rel. Welter, 218 Ill. 611, 616.) The term "Quasi-judicial" is employed to describe boards or agencies which, while not a part of the judiciary exercise functions of a judicial nature. (50 C. J. S. 653; Parker v. Kirkland, 298 Ill. App. 340, 18 N.E.2d 709.) Whether appellant was or was not entitled to receive a pension was a question of fact to be determined by this board of trustees. The statute vested exclusive control and management of the pension fund in this board of trustees and it was the duty of this board to disburse this fund and designate the beneficiaries thereof according to the provisions of this Pension Act.

The order entered April 14, 1953, directed that a pension be paid to appellant conditioned upon her making contributions to the pension fund for periods which her husband served as a temporary employee. Whether appellant was present at this meeting of the board on April 14, 1953 or whether she was ever advised of this order does not appear. It was stipulated, however, that appellant never made these contributions and never received any benefits thereunder and it was also stipulated that the board never issued to appellant the certificate signed by the president and secretary of the

307

board as required by section 10 of the Pension Act. This was the status of the proceedings on April 28, 1953, when the board reconsidered its former order.

At its special meeting held on April 28, 1953, the board concluded that its finding two weeks previous was erroneous; that Bowden had not served as a policeman, within the meaning of the statute for the requisite time; that his employment as a policeman after March 3, 1945, was not by the authority of the Police and Fire Commission of the City but from July 24, 1950, Bowden was employed and re-employed as a temporary patrolman by the chief or acting chief of police every thirty days and at the time of his death was a temporary appointee within the meaning of Section 904f, chapter 24, Illinois Revised Statutes. The records of the police department reflected these facts which either had not been brought to the attention of the board on April 14, 1953, or had been misunderstood. Under these circumstances the order entered by the board on April 28, 1953, setting aside its order entered on April 14, 1953, was in accordance with the records of the police department and the only order it could enter if the board discharged its duty which was to protect the pension fund against payments to those not entitled to its benefits and to preserve it for the benefit of its eligible members. (People ex rel. Loftus v. Keller, 332 Ill. App. 389, 394.)

In Carpenter v. City of Chicago, 199 Ill. App. 558, 562, 563 the circuit court of Cook County dismissed a petition for a writ of mandamus by a Chicago policeman who sought to be placed on the pension roll of the police pension fund upon the theory that he had served as patrolman on the police force for twenty years, as provided by the applicable statute. The answers of the defendants denied that the petitioner had served twenty years in the police department and alleged he had served a little more than thirteen years. The court

found that petitioner had not been in the actual service of the police department for the required length of time and, in the course of its opinion affirming the judgment of the circuit court, said (pp. 562, 563) : "Under the statute providing for the formation and disbursement of the police pension fund, only those are entitled to a pension who 'shall have served for a period of twenty years or more in the police department.' We hold that this means actual service, and that petitioner is not entitled to credit for the period of time of over ten years when he was not in service. One of the reasons supporting this conclusion is found in the statute, which provides that the fund shall in part be made up from the salary of each policeman during his period of service. This clearly indicates that the period of service for twenty years is cotemporary with the contribution or deduction from the officer's salary during this period. To hold otherwise would permit of an officer participating in a pension fund to which he might not have contributed anything. In the instant case it would permit the petitioner to share in a pension fund towards which he had not made the statutory contribution from his salary for a period of nearly half of the time upon which he bases his claim. This is contrary to any reasonable construction of the statute."

In the instant case Gilbert C. Bowden, had been a member of the police force for nine years, nine months and eighteen days when he severed his connection with the police force on March 3, 1945, during which time he made the required contributions to the fund. During the next five years, four months and twenty-one days he had no connection with the police department or the city and when he again entered the employ of the city the record discloses he was appointed "extra patrolman" by the chief of police on July 24, 1950, and was reappointed in August and September, 1950, and

served through October 6, 1950 and from that date until June 26, 1951, he had no connection with the police force. On June 26, 1951, he was again appointed "extra patrolman" by the chief or acting chief of police and reappointed every month until October 13, 1952.

During the seven years, seven months and ten days, that is from March 3, 1945, to October 13, 1952, Bowden recognized that he was not a member of the police force. If he was a member of the force during this time he would not have made repeated applications for reinstatement and if he was a member of the police force a portion of his salary would have been deducted and it would have gone into the pension fund or he would have made direct contributions to that fund. He did not make any such contributions nor was any part of his monthly salary deducted nor were his applications for reinstatement ever approved and he never took any physical examination as the statute directed. Mr. Bowden must have known that the pay-roll record of the city carried his name under the designation "extra patrolman" and he knew when he received every monthly salary check that no deduction had been made for the pension fund.

Appellant's contention that Bowden, at the time of his death was not a temporary employee but a member of the police force and that he had been for more than ten years is not sustained by the stipulated facts and the order entered by the board on April 28, 1953, was the only order that could be entered consistent with those stipulated facts.

██ ██ If, however, appellees had no right or authority on April 28, 1953, to reconsider its previous order entered two weeks before, the board then either exceeded its jurisdiction or it proceeded in violation of law. Those questions are properly reviewable by writ of certiorari. (Shilvock v. Retirement Board of the Policemen's Annuity and Benefit Fund, 285 Ill.

310

App. 178; Brown v. Van Keuren, 340 Ill. 118; People ex rel. Loftus v. Keller, 332 Ill. App. 389.) In a review of the record of the action of a police pension board by certiorari, the court may inquire (1) whether the board had jurisdiction of the parties and the subject matter; (2) whether it exceeded its jurisdiction; and (3) whether it proceeded in violation of law. (Van Ort v. Board of Trustees of Police Pension Fund of Village of Summit, 337 Ill. App. 489.)

Eddy v. People ex rel. Welter, 218 Ill. 611, cited and relied upon by appellant, was a mandamus action. The petition averred that the husband of relator became a member of the police force of the City of Chicago on November 22, 1882, and remained so until his death on July 8, 1885; that relator, as his widow, applied for a pension, and the board of trustees found that Welter's death was due to an injury received by him in the discharge of his duties as a police officer and awarded to his widow a pension which was paid to her for eighteen years, that is, from 1885 until October 17, 1903. At that time her name was dropped from the pension roll and the board refused to pay her a pension. The Clerk of the pension board advised her that further payments would be withheld for lack of evidence that the death of her husband was caused by an injury which he "received while in the performance of his duties as required by law." The petition sought to have relator's name restored to the pension roll and the board directed to pay her a pension. The trial court overruled a general demurrer to this petition. The defendants elected to stand by their demurrer, and a judgment was rendered in favor of the relator in accordance with the prayer of the petition.

In affirming the judgment of the Appellate Court, which affirmed the judgment of the circuit court, the Supreme Court, in its opinion, referred to the applicable statutory provisions to the effect that the trus-

311

tees should hear and determine all applications for relief under the act and that its decisions should be final and conclusive. The court then said (p. 616): "We think it clear from a consideration of these sections of the statute that the board of trustees created by said act, in passing upon the right of the relator to participate in said fund as a pensioner, exercised quasi-judicial powers and that their finding, when made, was binding upon all the world and upon the board of trustees unless the action of the board was subsequently set aside by said board of trustees, and that said board of trustees had no power to review the action of the board which allowed said pension upon the question of the right of the relator to a pension except upon the ground that the board which allowed the pension, was without authority to act or the relator was guilty of fraud in procuring the pension to be allowed."

What the court held in the Eddy case was that the board of trustees in 1903 had no power to review the action taken by a prior board of trustees eighteen years previously and which had been fully complied with during this period of time, unless the board which originally granted the pension was without authority to act or that the widow, in procuring the allowance of the pension in the first instance, was guilty of fraud.

The facts in the instant case are not analogous to the facts in the Eddy case. Here appellant bases her claim for a pension on the ground that her husband died while a member of the police force and after he had served ten years. Here the board, on April 14, 1953, so found and entered an order directing that a pension be paid to petitioner effective December 1, 1952, conditioned, however, upon payment by her of contributions equivalent to the amount which should have been contributed by her husband had he made contributions to the pension fund during his periods of service after March 3, 1945. No certificate to this effect was ever

issued by appellee to appellant and the contribution to the pension fund required by this conditional order was never made by appellant.

Under these circumstances, the board, not acting capriciously or arbitrarily but upon the facts which existed not only on April 14, 1953, but on April 28, 1953, and mindful that under the provisions of the Pension Act which gave it exclusive control and management of the pension fund and directed it to disburse that fund and designate the beneficiaries thereof according to the provisions of this pension fund act, could only reverse its erroneous order of April 14, 1953, and enter an order denying a pension to appellant.

█ It was said in People ex rel. Langan v. Hansen, 252 Ill. App. 212 (221) "A pension board has no powers beyond those given to it in the Act creating it, and has neither the right nor the power to pay moneys to anyone not within the terms of the Act fixing the conditions under which a pension is payable." If, therefore, the pension board in the instant case had no authority on April 28, 1953, to reconsider its order of April 14, 1953, and had the trial court awarded a writ of mandamus the trustees would be obliged to pay money to a person not within the terms of the Act which fixes the conditions under which the pension is payable. The trial court therefore properly dismissed the petition and denied appellant the relief she sought.

██ A writ of mandamus will not be granted where the granting of the writ will not promote substantial justice. In State Life Insurance Co. v. Board of Education of Chicago, 394 Ill. 301, the court said: (p. 318) "The writ is not granted as a matter of absolute right. (Jones v. Clark, 355 Ill. 527; People ex rel. Carlstrom v. Shurtleff, 355 Ill. 210). The court, in the exercise of wide judicial discretion, may, in view of consequences, refuse the writ. (People ex rel. Reconstruction Finance Corp. v. Board of Education, 386

Ill. 522; Stockholm v. Daly, 374 Ill. 441; Raclin v. Village of Winnetka, 369 Ill. 532.)"

The judgment of the trial court is clearly right and must be affirmed.

Judgment affirmed.

SPIVEY, J., concurs.

McNEAL, J., dissenting:

I regret that I cannot agree that the judgment of the trial court should be affirmed. The application for pension benefits in this case was not made by a policeman or by an officer appointed for temporary duty. The provisions of sections 1, 3 and 19 of the Pension Act (Pars. 892, 894 and 904f, Ch. 24, Ill. Rev. Stat., 1951) are not pertinent on this application. Here the widow of a member of the Kankakee police force made application for benefits under section 6 of the Act (Par. 897, Ch. 24, Ill. Rev. Stat., 1951). At its regular meeting the board correctly found: that applicant's husband, Bowden, had served over ten years in the service of the Kankakee police force as a member thereof; and that he was a member of the force and still in the service of the city as a member of the force at the time of his death. These are all of the requirements prescribed for a widow's pension under section 6. The board found that there was satisfactory proof of the foregoing facts and ordered and directed payment of the pension to Bowden's widow effective December 1, 1952, upon her payment to the fund of contributions equivalent to the amount he would have paid during his service after March 3, 1945.

In People ex rel. Langan v. Hansen, 252 Ill. App. 212, the board revoked a pension under a statute which expressly gave the board power to suspend any pension granted as the result of misrepresentation, fraud or

error, provided the beneficiary be first notified of the proposed action. The Pension Act under consideration here gave the board no such power, and as the court said in the Langan case, a pension board has no powers beyond those given to it in the Act creating it. In the instant case, at its special meeting, the board took additional evidence, and reconsidered and reversed the action taken at its regular meeting, without any notice to the widow and wholly without statutory authority so to do. It seems to me that where a board proceeds without notice to or the presence of the person most vitally interested in the proposed action, its good faith is questionable and its action is far from judicial; that under such circumstances, the action taken by the board at its special meeting was wholly unauthorized and in violation of law; and that the original order should stand. Except for the time interval between the two actions, I think that the facts here are analogous to the facts in Eddy v. People ex rel. Welter, 218 Ill. 611, and that the decision in that case should be followed here.

The writ should issue in this case in order to promote substantial justice. Bowden made contributions to the pension fund for all of the prescribed ten year period, except about two months. He served as a member of the police force for about eleven years and five months. His duties throughout such service were the same as those performed by regular patrolmen. For the last nineteen months of his service Bowden was carried on the payroll as an "extra patrolman," not as a special police officer, nor as an officer appointed for temporary duty, nor as a temporary appointee or on probation. The board's reversal depends upon the chief's conclusion that Bowden was a "temporary" patrolman. This conclusion is not supported by the facts as shown by the payroll and the stipulation that Bowden's duties were the same as those of a regular

315

patrolman. He made repeated applications for reinstatement, but no physical examination was ever provided. He must have been physically fit and entitled to reinstatement, or the chief would not have reappointed him nineteen times and he could not have performed the same duties as regular patrolmen throughout this period. The funds necessary to pay this pension are available. When Mrs. Bowden's payment of contributions required by the original order has been made, the fund will have received from the Bowdens considerably more than ten years contributions. To award the widow a pension will cost the fund no more than a pension for a widow of any other policeman who contributed to the fund for eleven years and five months. To affirm the judgment denying relief in this case, enriches the fund to the extent of Bowden's contributions, and avoids the purposes of the Pension Act. The judgment should be reversed and the circuit court should be directed to issue the writ.